## Chris Rasmussen, Appellee, v. Emma Harper, Appellant.

### Gen. No. 38,863.

Opinion filed December 9, 1936. Rehearing denied December 28, 1936.

ANDERSON & ANDERSON, of Chicago, for appellant; EARLE G. KALLEN, of Chicago, of counsel.

FRANK A. RAMSEY and ERNEST SAUNDERS, both of Chicago, for appellee.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This case comes to this court on an appeal from a decree entered in the superior court in favor of the plain-

tiff Chris Rasmussen. The suit was brought by him to recover on a mechanic's lien against Gust A. Harper and Emma Harper, his wife, who were the owners of real estate situated at 6919 to 6925 Stony Island avenue, Chicago, Illinois. Other defendants were Super-Service Stations, Inc., as assignee of the lease on the premises.

The mechanic's lien is not based upon the claim that the defendants Gust A. Harper and Emma Harper, his wife, engaged the plaintiff to do any work on the building, but that they, as owners of the property, knowingly permitted the work to be done by a contractor employed by the assignee of the leasehold. The facts are as follows:

On June 4, 1927, Gust Harper, as owner of the premises involved herein, leased the same to Louis A. Schnake and Elmer Harper, to be used as a garage. Two years later these lessees formed a corporation and did business under the name of The New Rex Garage Company. On June 25, 1929, The New Rex Garage Company entered into an agreement with the Super-Service Stations, Inc., to assign to the latter its lease to the premises and on the following day the Super-Service Stations, Inc. entered into a contract with the plaintiff Chris Rasmussen, under which the latter agreed to remodel the building on the premises covered by said assigned lease for the sum of $23,305. A year later the Super-Service Stations, Inc. was adjudicated a bankrupt, and there was due and owing to the plaintiff at that time for labor and materials furnished under the above mentioned contract and for certain other work claimed by the plaintiff as extra and additional work, a balance of $10,885.87, which was later reduced $126 by a dividend from the trustee in bankruptcy.

On January 23, 1931, plaintiff filed his bill and answers were filed by the owners of the premises, Gust A. Harper and Emma Harper. The cause was referred

to a master who made his report finding that the plaintiff was entitled to a mechanic's lien on the premises in question for the full amount due, together with interest thereon.

Plaintiff's contention is that Gust A. Harper, as owner and agent for his wife, knowingly permitted the plaintiff to perform the work and furnish the material ordered by the assignee of the lease, Super-Service Stations, Inc. To sustain this contention proof was offered that Gust A. Harper was present at the garage and saw the work being done and plaintiff further contends that by Harper's signing the consent to the assignment of the lease from The New Rex Garage Company, Elmer Harper and Louis Schnake the lessees to the sublessees, Super-Service Stations, Inc., he knowingly permitted said work to be done.

On behalf of the defendant it is contended by the surviving defendant, Emma Harper, that her husband Gust A. Harper had not authorized or knowingly permitted the performance of any work or the furnishing of any of the materials; that during the entire progress of the work she and her husband were at Hamlin Lake, Michigan, 250 miles from Chicago, and did not return from there until the latter part of October, 1929, when all the work had been done with the exception of a few odd jobs not a part of the original contract; that the consent to the assignment of the lease, relied upon by the plaintiff, cannot be construed as an authorization for the performance of the work alleged to have been done by the plaintiff and cannot be construed as implying knowledge on his part that the work was to be done.

The master found for the plaintiff, which report after objections and exceptions had been overruled, was sustained by the decree heretofore entered by the superior court.

The evidence offered before the master as to the presence of Harper at the garage whilst the work was being done was in direct conflict. Two witnesses stated

that they saw him there during the progress of the work and some four or five other witnesses, most of them disinterested, stated that he was in Michigan all of the time the work was being done.

When the New Rex Garage Company, Elmer Harper and Louis A. Schnake sold their leasehold interest to the Super-Service Stations, Inc. for the sum of $25,000, the agreement they entered into provided as follows:

"The parties of the first part agree to secure permission, *in writing,* from said lessor, Gust A. Harper, to conduct by party of the second part on said premises, in addition to the business in said lease provided, of an automatic auto laundry, with greasing and oiling pits, polishing, brake testing and lining business, and to install the necessary machinery *and equipment and make the necessary changes in said premises for the convenient carrying on of said businesses,* and said party of the second part agrees, upon the termination of said lease, *to restore said building and said premises to their present condition. . . .*"

Paragraph 6 of the agreement between The New Rex Garage and the Super-Service Stations, Inc., provides as follows:

"The parties of the first part agree to secure permission, in writing, from said lessor, Gust A Harper, to the conduct by party of the second part on said premises, in addition to the business in said lease provided, of an automatic auto laundry, with greasing and oiling pits, polishing, brake testing and lining business, and to install the necessary machinery and equipment and make the necessary changes in said premises for the convenient carrying on of said businesses, and said party of the second part agrees, upon the termination of said lease, to restore said building and said premises to their present condition."

Paragraph 12 of said agreement provides as follows:

"Parties of the second part agree to save harmless said parties of the first part of and from, and indem-

nify them for any and all losses, damages, claims, demands and expenses which said parties of the first part may sustain or incur by reason of any proposed alterations made in or to the buildings and/or premises herein mentioned.''

Paragraph 16 of said agreement reads as follows:

''It is further agreed by and between the parties hereto that in lieu of said twenty-five (25) shares of stock of the Washington Park National Bank, now deposited with lessor as security for the performance of the covenants of said lease, said party of the second part will deposit merchantable securities of the market value of Twelve Thousand ($12,000.00) Dollars with the Washington Park National Bank, as escrowee, as security for the performance of the covenants of said lease with provisions for substitution of securities and income on securities to go to party of the second part while not in default, and said parties of the first part agree to secure the approval and consent of said Gust A. Harper, the lessor in said lease, to the substitution of said securities as aforesaid, and to such escrow.''

When The New Rex Garage Co., Elmer Harper and Louis A. Schnake, the original lessees, went to Gust A. Harper to obtain his consent to the assignment of the lease, in pursuance of their covenant that they would obtain from him a written consent, Harper gave them the following agreement:

''I agree to the assignment of said lease as aforesaid, and to the additions in the character of the business to be conducted therein, and to accept service of the notice of the renewal of said lease under the option therein contained, and I agree to consent to the execution of the said sub-leases above mentioned. I further agree to the substitution of merchantable securities of the market value of at lease Twelve Thousand ($12,000.00) Dollars, to be approved by me, in place and instead of said twenty-five (25) shares of the stock of Washing-

ton Park National Bank, as security for the performance of the covenants and conditions of said lease and acknowledge that there are now no existing defaults under said lease. This consent shall cover this assignment only."

It is to be noted that in the original agreement which was entered into between Elmer Harper, Louis A. Schnake and The New Rex Garage Company with the Super-Service Stations, Inc., pertaining to the assignment of the lease, they agreed to obtain from Harper his consent in writing to "*make the necessary changes in said premises for the convenient carrying on of said businesses,* and said party of the second part agrees upon the termination of said lease to restore said building and said premises to their present condition." This original lease which was assigned by the original lessees contained a provision that no changes would be made in any partitions, etc., or attach any article of a permanent character without the written consent of the lessor. The evidence shows that plaintiff knew the contents of this lease.

When the consent to the assignment of the lease by the original lessee was executed by Harper, evidently on the advice of his lawyer he did not consent to the "necessary changes in said premises." The master in his report as to the knowledge of Harper, by his presence at the building during the time the work was being done, makes no finding thereon and disposes of this fact by saying that it is entirely immaterial whether or not Harper was on the premises in question during that period because he had been fully advised before the work was started that the Super-Service Stations, Inc., was to begin such work. No proof was offered that Harper knew of the amount or value of any work to be done on these premises.

It is claimed on behalf of the plaintiff that this is a case where the defendant, the owner of some real es-

tate, who had leased the property and had consented to a sublease therefor, is liable for any work that might be done in the future on that premises on the theory that he had, under the statute, authorized or knowingly permitted the Super-Service Stations, Inc., as assignee of the lease to said premises, to enter into a contract with the plaintiff for the remodeling and alterations made on the premises.

The theory underlying in the cases holding an owner liable for work done pursuant to the order of his tenant, is that it would be unjust to permit the owner to knowingly obtain additions and improvements to his real estate and not be liable for the same, as it would be an unjust enrichment.

In this case the original lessees, the sublessees and the contractor who did the work had in mind no benefit to the owner. It was provided in the lease that when the lease terminated the alterations would be removed and the building restored as it was originally. As before stated the underlying theory of the mechanics' lien laws is that the owner of the fee is benefited by buildings and improvements erected on his premises as they became part of the realty and that he, having received that benefit, should in right and justice pay for such benefit when it was induced or encouraged by his act.

In *Colp v. First Baptist Church*, 341 Ill. 73, the court said:

"The purpose of such a statute is to permit a lien upon the premises where a benefit has been received by the owner and where the value or condition of the property has been increased or improved by reason of the furnishing of labor and materials."

In this case it is quite evident that nothing in the sublease or in the assignment by its terms indicated the consent of the defendant to the alterations made on the property. On the contrary, the consent appears to have been withheld. Further, the consent to the sub-

stitution of securities in no way refers to any contemplated changes in the building which would be one of the most natural things for an owner to consider if he contemplated that his premises might be made liable for an indebtedness of $25,000. The provision that all changes in the premises would be removed and the same returned to its original condition would protect him.

Counsel for plaintiff calls our attention to the case of *Mayer v. Collins,* 279 Ill. App. 439, wherein this court held that where a fact finding of the master in chancery, concurred in by the chancellor, is not against the manifest weight of the evidence, the Appellate Court is not warranted in disturbing the decree based on such finding.

Counsel for plaintiff, continuing, say:

"In this case, the only question of conflict of evidence is on the question of the presence of Harper at the work during July, August and September, 1929."

Upon referring to the master's report we find that he does not make a report upon this question and uses the following language:

"It seems entirely immaterial to me whether or not Gust Harper was upon the premises in question during that period for he had been fully advised prior to the beginning of the work of the complainant that the Super-Service Stations, Inc., were about to begin such work."

Plaintiff evidently thought that it was necessary to prove this fact for they produced witnesses for that purpose.

In paragraph 15 of his report the master further found:

". . . I find, however, that the said defendant Gust A. Harper, for himself, and as agent for his wife, at the time that he signed his written consent to the assignment of said leasehold to the said Super-Service Stations, Inc., was fully advised and conversant with all the terms and conditions of said contract of June 25,

1929, as set forth in Finding 5 of this report and especially of Paragraph 6 of said contract, and was fully informed as to the nature of the business proposed to be conducted in and upon said premises by the said Super-Service Stations, Inc., . . ."

We have gone through the evidence very carefully and have failed to find any evidence showing that the contract between the Super-Service Stations, Inc. and the plaintiff was ever submitted to the defendant or that he knew of its contents or of what the extras consisted. It is quite evident that the trial court in approving the master's report assumed that the signing of the consent by the defendant Harper was tantamount to full knowledge of everything they proposed to do in the future and for that reason did not consider the fact relative to Harper's presence during the progress of the work as proven, or even necessary to be proven.

As was said in the case of *Hohmeier Lumber Co. v. Knight,* 350 Ill. 248:

"Notwithstanding the provision of section 39 of the Mechanic's Lien act that the statute shall be liberally construed as a remedial act the statute creates a lien which did not exist at common law, and, with respect to the requirements upon which the right to a lien depends, the statute will be strictly construed." *Hoier v. Kaplan,* 313 Ill. 448.

It is further contended by the defendant that inasmuch as the contract between The New Rex Garage, Elmer Harper and Louis A. Schnake and the Super-Service Stations, Inc., required that The New Rex Garage Company, the original lessee would obtain from the lessor Harper, permission in writing to "make the necessary changes in said premises for the convenient carrying on of said businesses," which was not done, that this was a condition precedent which, not being complied with by the plaintiff, bars him from recovery.

In the case of *Solomon, Inc. v. Padorr*, 282 Ill. App. 269, at page 273, the court said:

"Complainant states the 'main question that is pertinent to the issues in this case' in the form of question and answer. In substance, it asks, Does the sublease authorize the sublessees to make improvements and alterations? If the answer is 'No,' it says then there is no right to a lien; if 'Yes' then there is such right. . . . It is true the sublease by implication authorized the alterations and improvements which the sublessee agreed to make, and to that extent the sublessor had knowledge, but the authorization was not unlimited or unconditional. There were provisions in the paragraph concerning the alterations and improvements which amount, as it seems to us, to conditions precedent. These conditions were (1) the consent of the sublessor in writing, (2) the deposit by the sublessees of sufficient money to cover the cost of making improvements, and (3) the deposit with the sublessor of waivers of mechanics' lien claims executed by the contractors. . . . Moreover, on this phase of the case, since the question is whether a lien arises, the sublease will in that respect be strictly construed as against complainant."

In the case of *Hacken v. Isenberg*, 288 Ill. 589, it appeared that Henry A. Rollberg and his wife owned certain premises which they leased to one Joseph Hacken. Hacken entered into a contract with one Isenberg to remodel the building. The court in considering the written contract, at page 596, said: "The provision in the second clause reads: 'That the said party of the second part (Hacken) will keep said premises in good repair, and will immediately replace all broken globes, glass or fixtures with those of the same size and quality as that broken.' The fourth clause provides that Hacken will not permit any alterations of or upon any part of said demised premises except by written consent of the lessor, and that '*all alterations and additions to said*

*premises shall remain for the benefit of the lessor,* unless otherwise provided in said consent.' "

Isenberg sued to foreclose an alleged lien for work performed and materials furnished. The trial court held and decreed that the contractors were entitled to a lien upon the premises for a sum stated. The Appellate Court affirmed that decree, which decree was reversed by the Supreme Court which further held at page 596: "No such written consent was ever given by the lessor. . . . The lease, therefore, in our judgment, is positive and express evidence that no such alterations and additions can be made by the lessee until he is authorized to do so by a further writing. . . . The interest of the lessor cannot be subjected to a mechanic's lien for the subsequent construction of alterations and additions to the building, in the absence of any showing that he or she authorized or consented to the same. *Sorg v. Crandall, supra.*"

We are inclined to believe that where a plaintiff shows by his evidence that he relies upon a lease containing language which is the basis for a mechanic's lien against the lessor for work done for the sublessee, then, and in that event, the conditions of the lease, requiring the consent of the landlord in writing, is a condition precedent to his recovery and his nonproduction of such a consent in writing prevents him from recovering. Certainly the owner of property has the right to protect himself by putting clauses in his lease which may afford him protection and no inference or construction should be drawn in a mechanic's lien case which will obviate the necessity of complying with the known terms of the lease as entered into by the parties. This is particularly true in lien cases where the rule that prevails calls for a strict construction as to the requirements for a lien claimant. In view of the conclusion we have reached, we deem it unnecessary to pass upon the errors assigned on the admission of evidence.

From an examination of this record we are satisfied that the finding of the master and the decree of the superior court based thereon are erroneous, and for the reasons herein given, the decree of the superior court is reversed and the cause is remanded with directions to that court to dismiss the bill for want of equity.

*Decree reversed and cause remanded with directions.*

HEBEL and HALL, JJ., concur.