Saul Kahn, Plaintiff-Appellee, v. Deerpark Investment Co., an Illinois Corporation, Elm Investment Co., an Illinois Corporation, and Charles Biggam, Defendants, and Quinlan and Tyson Mortgage Corporation, Citation Respondent-Appellant.

Gen. No. 53,619.

First District, Second Division.

September 23, 1969.

<br>

Cummings & Wyman, of Chicago (Austin L. Wyman, Jr. and James M. Staulcup, Jr., of counsel), for appellant.

Charles C. Kirshbaum, of Chicago (Harry G. Fins, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

On April 2, 1965, the Elm Investment Company owned a parcel of real estate located in Zion, Illinois, which will be referred to as "the Zion property." On that date Elm executed a lease on the property in question. On June 1, 1965, the lease was assigned to Penn Mutual Life Insurance Company as security for Penn's first mortgage on the Zion property. Penn appointed Hart, Shaw and Company (predecessor to Quinlan and Tyson) as its administrative agents of both the mortgage and the assigned lease. Under an agreement Elm was entitled to rentals collected by Hart which exceeded sums necessary to pay installments on the mortgage loan.

On December 8, 1966, the plaintiff obtained judgments against Deerpark Investment Co., Elm Investment Co., and Charles Biggam, the owner of the two companies. The judgments were obtained in the Circuit Court of Cook County, but were not recorded in Lake County until

February 8, 1968. On December 22, 1966, Elm assigned to plaintiff its right to receive the excess rentals on the Zion property, which assignment was made to secure the payment of the judgment debt of December 8, 1966. This assignment to the plaintiff (which was never recorded) is the first of the two competing interests.

On January 4, 1967, Comet Builders and Supply Corp. obtained judgment against Biggam. On February 6, 1967, a land trust was created on the Zion property which was conveyed by Elm to the Cosmopolitan National Bank, as trustee for the beneficial owner, Colonial Bank and Trust Co. of Chicago, which conveyance was made to secure part of a loan made at Colonial. On February 15, 1967, Comet commenced garnishment proceedings in connection with its judgment against Biggam. As a result of subsequent negotiations, Colonial assigned its beneficial interest in the newly created land trust on the Zion property to Elm on April 4, 1968, and on the same date Elm assigned that interest to Comet. It is this beneficial interest of Comet's which is the second of the two competing interests. Comet repaid to Colonial all the indebtedness of Biggam and Elm, and on March 12, 1968, entered into an agreement with Biggam by which Biggam, in a satisfaction of debts owed Comet, would sell Comet the Zion property, among other things. Priority must be given either to plaintiff's assignment interest or to Comet's assignment interest.

As beneficiary of the trust Comet had claimed to be entitled to all excess rentals, but after a bench trial Quinlan and Tyson (successor administrator to Hart) were ordered to pay all excess rentals to the plaintiff. A motion of Quinlan and Tyson to set aside that order was denied, and this appeal is taken from the original order and the order denying the motion to vacate.

Quinlan and Tyson argue that plaintiff's interest in the excess rentals, as an incident to an estate in land, was

123

subject to the recording statute, and that since the interest was not recorded as of the date Comet received its assignment, Comet was entitled to rely upon a title search of the Zion property which disclosed no recorded interests in it. This being the case, Comet's interest in the recorded trust is superior to that of the plaintiff. The plaintiff asserts, however, that the subject matter under review—the excess rentals—is personalty, not real estate, and that the law of real estate is therefore inapplicable, and no recording was required to perfect the interest of plaintiff.

Ill Rev Stats 1967, c 30, § 27 provides in pertinent part:

> "Deeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate in this state, shall be recorded in the county in which such real estate is situated; . . . ."

Section 29 provides that authorized instruments which are unrecorded are void as to subsequent creditors and purchasers, without notice, and that such documents are ineffective as to subsequent creditors and purchasers until recorded. Section 37 of the statute provides:

> "The term 'real estate,' as used in this act, shall be construed as co-extensive in meaning with 'lands, tenements and hereditaments,' and as embracing all chattels real."

The determination of this case requires an analysis of whether or not plaintiff's interest in the Zion property was subject to the Recording Act. If it was, the plaintiff's interest did not become effective against Comet because it was not recorded at the time Comet took its interest in the land trust on the same property. The plaintiff's argument is based entirely on the fact that the subject matter of the suit concerns the interest of a beneficiary of a land trust. The difficulty with this argument is that

plaintiff treats its own interest as the beneficial interest in a land trust, but the land trust which was created was assigned to Comet, not to the plaintiff. Consequently, all the cases cited by plaintiff for the proposition that beneficial interests in land trusts are personalty and therefore not subject to the Recording Act, are not relevant, because plaintiff's interest was not that of a holder of a beneficial interest in a land trust, but simply an assignment of excess rentals in payment of a judgment, and no semantic fabrication can transpose that interest into a land trust.

The question that remains is whether the assignment was subject to the Recording Act, and we feel that the determination of that question centers on an analysis of the statutory language. Is an assignment of excess rentals an instrument "relating to or affecting title to real estate?" If so, it was subject to the act and the failure to record it would mean that it was ineffective as against Comet who took its interest without notice of the prior assignment. The statute sets out that the term "real estate" should be construed as coextensive with lands, tenements and hereditaments, and as embracing all chattels real. It thus appears that the legislature was interested in giving a broad scope to the statute. If the assignment of excess rentals falls within any of the statutory guides as to what constitutes real estate, then the assignment could be effective against Comet only if it had been recorded when Comet took its interest in the trust.

In People v. Phillips, 394 Ill 119, 67 NE2d 281, the court was faced with the question of whether an oil lease conveyed a taxable estate in land separate from the rent or royalty to be paid. The court pointed out at page 122 that "rent to grow due is a part of the land and incident to it, . . . ." On page 123 the court quoted with approval from State v. Royal Mineral Ass'n, 132 Minn 232, 156 NW 128, where it was said, "Unaccrued rents are not

personal property. They are *incorporeal hereditaments.* They are an incident to the reversion and follow the land." (Emphasis supplied.)

██ Since the right to future rents is an incident to an estate in land, the assignment of such a right is a conveyance of a hereditament. In the case before us the plaintiff received an assignment of a hereditament, and our statute provides that real estate and hereditaments are coextensive and an instrument relating to or affecting title to real estate must be recorded to be perfected against subsequent purchasers and creditors, without notice. Since the plaintiff's interest was one relating to or affecting real estate as defined by section 37, it had to be recorded to be perfected, and since it was not recorded, Comet Builders, as a subsequent creditor without notice, took free of any interest of the plaintiff.

In Bullard v. Turner, 357 Ill 279, 192 NE 223, certain real estate was owned by Turner. On November 28, 1921, he executed a lease of the west half to the Brockton Heel Company for a term from March 1, 1922 to April 30, 1927, with the option to extend the term for an additional five years, which option was exercised by lessee. On July 1, 1929, the property was encumbered by a first mortgage to Bullard. Prior to that time Turner had become indebted to the Standard Chair Company of Pennsylvania, and to secure the payment of his indebtedness, assigned to that company, by two instruments dated August 8, 1927, the lease he had made to Brockton and the rental accruing under it. These assignments were not recorded. The controversy concerned Brockton's right to collect rents during the pendency of the foreclosure, and the court said at page 282:

> "The decision of that question depends upon the legal effect of the unrecorded assignments of the lease and the rental without notice of the rights growing

out of such assignments other than that afforded by the occupancy of the tenant. The appellant contends that there was no competent proof of the assignments; that even if there were such proof, the possession by the tenant did not give constructive notice of the appellee's claim; that, unless the trustee had actual notice of the assignments, he had the right to assume that no such instruments existed, and that, to constitute notice to the appellant, the assignments should have been recorded."

The appellee contended that possession of property by a tenant is notice not only of the right, title and interest of the tenant and of the landlord, but also of the rights of the person to whom the tenant pays rent, and that actual notice of the rights of the appellee was not necessary because the possession of the tenant was sufficient to put the trustee on inquiry, the neglect or omission of which nevertheless bound the trustee by whatever facts an inquiry would have disclosed. The court held that the assignee of the rentals failed to protect his interest by recording, and as a result, his interest was subordinate to that of the mortgagee. The court said at page 284:

"The assignee, by the assignments, claimed an interest in the demised real property and was charged with knowledge of the statutory requirement that to have such an interest protected against subsequent purchasers and incumbrancers, the assignments should have been recorded. Owing to the failure to record them, an examination of the public records pertaining to the title to the property would not have disclosed their existence. . . . There is neither claim nor proof that the trustee had actual notice of the assignments; the assignee did not protect its interest by filing them for record, and the trustee, there-

fore, has the right to rely upon section 30 of the act concerning conveyances." [Section 30 referred to is currently section 29 of the Conveyance Act.]

█ In the instant case, the beneficial owner of an interest in the land trust also asserts that it made a record search which showed no prior interest attaching to the property in question, and the plaintiff has neither claimed nor proved that the beneficiary had actual notice of the assignments. The policy of allowing parties to rely on the public record regarding interests relating to or affecting real estate has long been recognized in this State. First Nat. Bank of Chicago v. Paris, 358 Ill 378, 385, 193 NE 207; Turpin v. Ogle, 4 Ill App 611, 621.

Plaintiff attempts to avoid a review of its case by this court by arguing that there was no report of proceedings, and we are therefore bound to presume that there was sufficient evidence to sustain the trial court's decision because no factual issue may be reviewed. In plaintiff's argument it is pointed out that several statements of fact made by the citation respondent are unsupported by the record because there is no report of proceedings.

Memorandums of law had been filed in the trial court in which the pertinent facts were stated and to which plaintiff apparently acquiesced since it did not reply that the facts were other than as stated. It should also be noted that in this court the plaintiff failed to include a statement of facts while the citation respondent did make its statement. The plaintiff only suggested that several of the citation respondent's statements were unsupported by the record on appeal. Regarding plaintiff's assertion that the statements were not supported by the record on appeal, we note that Supreme Court Rule 321 provides in pertinent part:

"The record on appeal shall consist of the judgment appealed from, the notice of appeal, and other

parts of the trial court record designated in the praecipes. The trial court record includes any report of proceedings *and every other document filed* and judgment and order entered *in the cause.*" [Emphasis supplied.]

The citation respondent's statement to this court is extracted from the briefs filed in the trial court, which briefs were documents filed in the cause, were part of the trial court record, and therefore became a part of the record on appeal.

Although the plaintiff suggests that we not consider certain statements made by the citation respondent, it has never affirmatively set out that any of those statements are untrue, and we feel there is no real issue over any factual matters. The question presented for review is primarily one of law. Pilafas v. Pilafas, 39 Ill App2d 69, 72, 188 NE2d 235; Kuhlman v. Cotter, 92 Ill App2d 475, 477, 234 NE2d 815.

In considering that question of law, we have reached the conclusion that the trial court erred when it directed the citation respondent to pay the excess rentals to the plaintiff, and erred when it denied citation respondent's motion to vacate its order. The assignment of the excess rentals was subject to the Recording Act for the reasons we have set out, and Comet Builders therefore took free of the unrecorded interest. The orders appealed from are reversed.

Orders reversed.

LYONS, P. J. and BURKE, J., concur.