ARMCO STEEL CORPORATION, Plaintiff-Appellee, *v.* LA SALLE NATIONAL BANK, Trustee, *et al.*, Defendants-Appellants.

(No. 74-96;

Second District (2nd Division)—September 4, 1975.

Michael A. Cotteleer, of Herrick, McNeill, McElroy & Peregrine, of Chicago, for appellants.

Sam Alschuler, of Alschuler, Putnam, McWethy, Weiss & Weiler, of Aurora, and Robert Irmiger, of Chicago, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from a judgment in favor of the plaintiff in an action to foreclose a mechanic's lien. After a trial on the merits the court

issued a decree of foreclosure and awarded the money judgment prayed for.

The defendants (La Salle National Bank, as trustee, and L. W. Besinger, as beneficiary) appeal on the grounds that the trial court erred in finding that the legal and beneficial owners of the land in question (hereinafter referred to as lessors) "knowingly permitted" the improvements which are the subject of the lien to be made by the defendant lessor. The mechanics' lien statute, section 1 (Ill. Rev. Stat. 1973, ch. 82, par. 1) provides in part as follows:

"Any person who shall by any contract or contracts, express or implied, or partly expressed or implied, with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land, furnish material, fixtures, apparatus or machinery, forms or form work used in the process of construction * * * to the lot or tract of land * * * is known under this Act as a contractor, and has a lien upon the whole of such lot or tract of land * * *."

The facts of the case are relatively simple. Prior to 1966 L. W. Besinger, the beneficial owner of the land in question, constructed and operated an automobile racetrack on the subject land. In 1966 Besinger entered into a lease with Meadowdale International Raceways, Inc., whereby Meadowdale was to improve the site and operate it as a racetrack under their own name.

By Article 4 of the lease, the lessee covenanted to *improve* the racetrack in various ways to make it bigger and improve visibility and to do other construction work and "repair bridges and track course in a satisfactory condition to run events."

Article 4 in another paragraph also provided as follows:

"All such improvements and repairs to be completed by Lessee without cost of Lessor and be completed on or before June 5, 1967. Estimates and bids by responsible contractors for work to be performed shall be furnished by Lessee to Lessor for the aforementioned improvements not later than February 28, 1967, and if, in the opinion of the Lessor, all the estimates and bids are adequate, the Lessor will give his permission to proceed, which permission shall not be unreasonably withheld. Funds for making the improvements shall then be deposited with a bank or savings and loan association in an escrow account, which amount shall be sufficient to complete the necessary improvements heretofore set forth according to the estimates and bids. Verification of such escrow deposit shall be furnished Lessor by Lessee. No work shall

be commenced until such deposit is made in a manner to assure payment therefor. * * *"

The lease also provided that the improvements in question were to become the property of the lessor at the expiration of the lease.

The lease provided it should not be recorded but that a short memorandum lease might be recorded if either party so requested. Neither party did so request and apparently no memorandum of the lease was ever recorded.

Pursuant to the covenants of the lease the lessee proceeded with improvements to the premises and incidental thereto ordered from Armco Steel Corporation material for a fence to be erected for the protection of spectators. The material in question, according to the complaint, was supplied during the period from April 10, 1968, to July 2, 1968. This was after the date specified for completion in the lease but it is not claimed by the lessor that it ever objected to construction work proceeding or material being delivered to the premises after the date (June 5, 1967) specified in the lease, or that either the lessee or the contractor was requested to desist from such delivery or that the lessor disclaimed responsibility therefor. It is true that the guard rails in question were not specifically authorized by the terms of the lease. However, they are claimed by the lessee to have been an incidental and necessary part of other required improvements to bring the racetrack to the capacity desired.

The lessor contends, however, that he is not liable to the contractor because the permission he gave to the lessee to make improvements was only valid within the framework of the lease provisions, *viz.*, (1) estimates and bids by responsible contractors to be furnished to lessor; (2) lessor to give permission to proceed, if all bids and estimates are adequate; (3) funds to pay for such improvements to be deposited in an escrow; (4) verification to be given of such escrow deposit; (5) no work to commence until such escrow deposit was made. Since the conditions on which permission to proceed were based were not complied with by the lessee, the lessor contends he did not "knowingly permit" the improvements to proceed.

First, to clarify the exact situation as between the parties, this was not a case of the lessee asking permission to make improvements after a lease had been signed. The lease *required* the lessee to make improvements as one of the covenants of the lease. Moreover, the lessee was under considerable time pressure to complete these improvements and impliedly if it did not do so by a certain date it would be in default. One of the improvements specified in the lease was to "build bleachers

seating approximately 12,000 people." That a fence or guard rail to protect the spectators would be required was obvious and this was a necessary corrollary of the requirement to enlarge the spectator capacity. There was thus more than a mere permission involved here, there was an obligation under a covenant in the lease to make not only specified improvements and enlargements, but also the improvements or enlargements necessarily incidental to those specified.

■■ The lessor, therefore, by the lease provisions brought about a situation whereby improvements of an extensive character were authorized and required to be made on the leased premises. The lessor's argument relative to permission being conditioned on certain safeguards in the lease being complied with is valid only as between him and the lessee—it does not apply to a third party without actual or constructive notice of such conditions. The lessor initiated the situation by authorizing the repairs and it was not the obligation of the contractor to inquire about the conditions of an unrecorded lease.

The facts of this case are completely distinguishable from the cases cited by the lessor here, *Edward Solomon, Inc. v. Padorr*, 282 Ill.App. 269, and *Rasmussen v. Harper*, 287 Ill.App. 404. Both of these cases involved sublessees and a lack of actual knowledge by the owner of the land until after the lien was filed. Here the landlord was the instigator of the improvements and knew that the improvements were in progress. His defense is not that he did not know the improvements were being made but that he did not know steel guard rails were being installed and the lessee did not make the required escrow deposit. Both the lessor and the employee designated by him to keep track of the improvements at the racetrack failed to make any adequate inspection to find out what was being done between June of 1967 and September of 1968, when notices of liens began to be received. Nevertheless, they both did go upon the land during that period and knew that certain improvements were in progress. Since the lessee was given authority and in fact was required by the lease to build bleachers adequate for 12,000 persons it was obvious that such an enlargement of the track capacity would require some construction in the way of a fence and guard rail. In any event, however, there is no claim of fraud or trickery by the lessee as to the ordering of the guard rails. It was not questioned by the lessor because the lessor did not keep track of the operation that was going on and was apparently unaware that the guard rails in question had been ordered. This, however, was no concern of the contractor.

■■ We believe the words of the statute "knowingly permit" are to be taken in the general sense of being aware of and consenting to such improvements, that is, the initiation of such improvements. They are not

intended as a continuing shield for the landlord in case the·lessee does not perform a particular covenant. The lessor contends the words "knowingly permit" must be given a strict construction since the mechanics' lien statute is in derogation of the common law and to be strictly construed. This is true as to the technical aspects of the procedural steps to be taken under the statute. However, this court has held in *Gunther v. O'Brien Bros. Construction Co.*, 293 Ill.App. 28, and in *Wanzer v. Smorgas-Brickan Developers, Inc.*, 130 Ill.App.2d 378, that while the procedure set forth in the mechanics' lien act for perfecting a lien must be strictly followed in order to establish the lien, it is intended as a remedial statute and once the statutory requirements as to procedure have been complied with the statute should be given a liberal construction so that justice will be done. See also *Miller v. Reed*, 13 Ill.App.3d 1074, which points out that a suit to foreclose a mechanic's lien is a suit in equity and equitable principals apply.

■■ We have, then, a situation involving an innocent third party—the contractor or materialman—and an owner of land, who through a lease, initiated improvements on said land. The lessee did not perform some of the covenants of the lease, but the lessor was negligent in permitting the work to continue and supplies to be ordered without the safeguards he had specified being complied with. Moreover, he did not see to it that the lease was recorded. In this situation there is no doubt the mechanics' lien statute is intended to protect the contractor or supplier who, without notice of any lease provisions, adds an improvement to the land through his labor or materials. As was said in *Cooper v. Palais Royal Theatre Co.*, 242 Ill.App. 184, under circumstances very similar to the case at hand:

> "The Theatre Company was under way, supposedly as a going concern, even though it might be hard up for money. The Thomassons, [owners] both father and son, knew the Stone Company was at work furnishing materials and labor for the Theatre Company, and by no overt act disputed the right of the Stone Company, or the Theatre Company, to go on, and put in a large and costly amount of labor and materials. In such a situation, we think an estoppel arose, such as the Lien Act contemplates, and as gives a right by the use of the words, 'knowingly permitting.'" (242 Ill.App. 184, 194-195.)

We have a parallel situation here and we think the trial court did not err in giving judgment for the plaintiff.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.