M. ECKER AND COMPANY, Plaintiff, v. LA SALLE NATIONAL BANK, as Trustee, *et al.*, Defendants (Ken-Lee Hardware Company, Counterplaintiff-Appellant; Inter-American Insurance Company, Counterdefendant-Appellee).

First District (2nd Division)   No. 1—93—4160

Opinion filed December 13, 1994.

Jonathan D. Moses, of Chicago, for appellant.

Much, Shelist, Freed, Denenberg & Ament, P.C., of Chicago (Arthur E. Rosenson and Wendy B. Kahn, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This appeal arises from a 1991 lawsuit filed by Inter-American Insurance Company (Inter-American) to foreclose a mortgage it held on property owned by a land trust with La Salle National Bank as trustee (La Salle Trust). Jackson/Green Limited Partnership (Jackson/Green) held the beneficial interest in the La Salle Trust. Ken-Lee Hardware Company (Ken-Lee) countersued to foreclose a mechanic's lien that it recorded against the same property. Ken-Lee appeals the circuit court's order denying its motions for summary judgment and for leave to amend its counterclaim, and granting Inter-American's motion for partial summary judgment. Ken-Lee questions whether the court erred when it held, as a matter of law, that Ken-Lee's mechanic's lien was subordinate to Inter-American's mortgage lien, in improperly resolving an existing factual conflict by granting summary judgment to Inter-American, and in denying leave to amend its counterclaim.

On September 28, 1989, La Salle Trust gave Inter-American a

note and mortgage on real estate owned by the trust and located at 820 W. Jackson Boulevard in Chicago (Jackson property). To further secure its obligations, La Salle Trust assigned all rents and leases to Inter-American, but expressly prohibited it from collecting the rents unless and until a default occurred and Inter-American took possession of the premises. The mortgage did not permit Inter-American to possess, sell or manage the Jackson property nor did it convey title or any other ownership rights. On November 22, 1989, Inter-American recorded its mortgage on the Jackson property.

On March 12, 1990, Ken-Lee entered into a contract with TKO Construction Company (TKO), Jackson/Green's corporate general partner, to provide materials for renovating the building located on the Jackson property. TKO was the "construction manager" for the building and had exclusive authority to request and approve work under the contract. Pursuant to the contract, Ken-Lee supplied materials to the building until August 27, 1990, but stopped deliveries that day because it deemed payments amounting to $123,403.95 to be delinquent.

In late 1990, Arc Ventures (Arc), the building's major tenant, contacted Ken-Lee and requested that it complete delivery of certain goods promised in the contract. Ken-Lee agreed, provided that the deliveries were made directly to Arc and paid for by Arc. As a result, Ken-Lee made additional deliveries to Arc at the subject property from November 26, 1990, until July 29, 1991, without Jackson/Green's or TKO's knowledge or consent.

On May 17, 1991, La Salle Trust and Inter-American entered into a settlement agreement when Jackson/Green defaulted on the mortgage note. Under the terms of the agreement, title to the Jackson property was transferred to American National Bank and Trust Company of Chicago. Inter-American Real Estate Holding Company held the beneficial interest.

On June 6, 1991, Ken-Lee filed a notice of mechanic's lien for $123,403.95 and designated August 27, 1990, as the date on which it completed performance under the contract. Ken-Lee never sought to amend this completion date in its notice of lien. On October 16, 1991, Inter-American filed suit to foreclose upon the mortgage. On July 27, 1992, Ken-Lee countersued to foreclose upon its mechanic's lien. In doing so, Ken-Lee again expressly designated August 27, 1990, as the date on which it completed performance.

Almost two years after it filed its notice of lien, on May 14, 1993, Ken-Lee moved for leave to file an amended counterclaim in order to allege that the date it completed work under the contract was July 29, 1991, when it made its final delivery to Arc, instead of August 27,

1990. Ken-Lee also moved for summary judgment on the proposed amended counterclaim, arguing that its lien, filed June 6, 1991, was filed within four months of the new date of completion and, under the Mechanics Lien Act (Act) (770 ILCS 60/0.01 *et seq.* (West 1992)), was superior to Inter-American's mortgage lien. Alternatively, Ken-Lee contended that Inter-American was an owner of the Jackson property and, thus, its mechanic's lien was superior even if it completed all work under the contract on August 27, 1990, because, under section 7 of the Act (770 ILCS 60/7 (West 1992)), a mechanic's lien can be filed up to two years after completion of performance and still be enforceable against an owner of the property.

The circuit court denied Ken-Lee's motion to amend its counterclaim, finding it untimely and unfairly prejudicial. The court also denied Ken-Lee's motion for summary judgment and granted Inter-American's motion for partial summary judgment, ruling that Inter-American's mortgage lien had priority over Ken-Lee's mechanic's lien. Ken-Lee timely filed this appeal.

## I

As a preliminary matter, because Ken-Lee claims the circuit court erred in denying its motion for summary judgment, Inter-American asserts that the denial of Ken-Lee's summary judgment motion is neither final nor appealable. Where, as here, the court granted Inter-American's motion for summary judgment at the same time it denied Ken-Lee's motion, the resulting order is final because it entirely disposes of the litigation. *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 494, 505 N.E.2d 314.

## II

Ken-Lee first argues that the circuit court erred in denying its motion for summary judgment and finding its mechanic's lien subordinate to Inter-American's mortgage lien because Inter-American was an owner of the Jackson property for purposes of the Act since the mortgage agreement assigned Inter-American all rents and leases. As a result, Ken-Lee concludes that under the Act its rights are superior to Inter-American's since its lien was filed within two years of its last date of performance. Inter-American replies that it was merely a mortgagee of the Jackson property and never an "owner" within the meaning of the Act.

This court must determine *de novo* whether the record supports the conclusion that no genuine issue of material fact exists in a summary judgment proceeding. (*Larson v. Decatur Memorial Hospital* (1992), 236 Ill. App. 3d 796, 602 N.E.2d 864; *Myers v. Health Specialists*

(1992), 225 Ill. App. 3d 68, 587 N.E.2d 494.) The entire record must be evaluated to determine whether such facts exist. (*Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 601 N.E.2d 286.) Genuine issues of material fact cannot be resolved by means of summary judgment. (*Vajda v. Arthur Andersen & Co.* (1993), 253 Ill. App. 3d 345, 624 N.E.2d 1343.) Where there are no disputed fact questions, nor differing inferences which may be drawn from undisputed facts, summary judgment is proper. *Larson*, 236 Ill. App. 3d at 800-01; *First State Bank v. Busse* (1984), 126 Ill. App. 3d 577, 580, 467 N.E.2d 1061; *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 161, 498 N.E.2d 697.

■ Under section 1 of the Act, a mechanic's lien extends to an estate in fee, for life, for years, or any other estate or any right of redemption, or other interest which the owner may have at the time of making such contract or may subsequently acquire. (770 ILCS 60/1 (West 1992).) Accordingly, the "owner," as used in the Act, means the owner of any interest in the land. (*Sorg v. Crandall* (1908), 233 Ill. 79, 84, 84 N.E. 181.) The holder of an equitable interest in the land, including a beneficiary under a land trust, is an "owner" within the meaning of the Act. *Dunlop v. McAtee* (1975), 31 Ill. App. 3d 56, 59, 333 N.E.2d 76.

■ In the instant case, Inter-American was not an "owner" within the meaning of the Act because it did not hold either legal or equitable title as a mortgagee of the Jackson property. A mortgage does not convey a legal estate to the mortgagee but merely gives the holder of the mortgage a lien on the property. *Board of Directors of Olde Salem Homeowners' Association v. Secretary of Veterans Affairs* (1992), 226 Ill. App. 3d 281, 288, 589 N.E.2d 761, *appeal denied* (1992), 146 Ill. 2d 623, 602 N.E.2d 447.

Nonetheless, Ken-Lee maintains that this particular mortgage created an "ownership" interest because it contained an assignment of rents provision. Consequently, Ken-Lee presents a question of first impression: whether an assignment of rents clause in a mortgage conveys an interest in property such that the mortgagee's status changes from secured creditor to owner under the Act. The assignment of rents clause at issue here provides, in pertinent part, as follows:

> "*Assignment of Rents and Leases*
>
> 19. To further secure Mortgagor's Obligations, Mortgagor sells, assigns and transfers to the Mortgagee all the rents, issues and profits now due and which may become due under or by virtue of any lease, whether written or verbal, or any letting of, or of any

agreement for the use or occupancy of the premises or any part of the premises, which may exist or which may be entered after this date or which may be made or agreed to by the Mortgagee under the powers granted in this Mortgage, *it being the intention to establish an absolute transfer and assignment of all of such leases and agreements,* and all the proceeds of such leases and agreements, to the Mortgagee \*\*\*.
\*\*\*
Nothing contained in this Mortgage shall be construed as constituting the Mortgagee a mortgagee in possession *in the absence of the taking of actual possession of the premises* \*\*\*.
\*\*\*
*Although it is the intention of the parties that the assignment contained in this paragraph 19 shall be a present assignment, it is expressly understood and agreed, anything contained in this Mortgage to the contrary notwithstanding, that the Mortgagee shall not exercise any of the rights or powers conferred upon it by this paragraph until an Event of Default shall exist under this Mortgage.*" (Emphasis added.)

Real estate mortgage transactions involving rent-producing assets usually include an assignment of rents, or an assignment of rents and leases, from the mortgagor to the mortgagee. (L. Cherkis, Collier Real Estate Transactions and the Bankruptcy Code § 2.03, at 2—61 (1991) (Collier).) A "true absolute" assignment of rents is one in which the assignor presently sells and disposes of all its title and interest in a property's rents and profits; a "collateral" assignment of rents is not a present assignment of rents, but instead is a grant of a lien as additional security for the mortgage loan. (Collier § 2.03, at 2—64, 2—65.) In most lien theory jurisdictions, courts refuse to recognize absolute assignments of rents in the context of mortgage financing transactions and regard the mortgagor as the owner of the rents and profits until the mortgagee takes steps to "perfect" the assignment, such as taking possession of the property or foreclosing the mortgage. Collier § 2.03, at 2—72, 2—73.

In Illinois, a clause in a real estate mortgage pledging rents and profits creates an equitable lien upon such rents and profits of the land, which may be enforced by the mortgagee upon default by taking possession of the mortgaged property. (*Anna National Bank v. Prater* (1987), 154 Ill. App. 3d 6, 17, 506 N.E.2d 769.) Absent a contrary provision in the mortgage, the mortgagor is entitled to the rents and profits of the mortgaged property as long as the mortgagor lawfully remains in possession of the premises. *Lake County Trust Co. v. Two Bar B, Inc.* (1992), 238 Ill. App. 3d 589, 596, 606 N.E.2d 258.

Here, the assignment of rents provision was simply additional se-

curity for Inter-American's mortgage lien. Introductory language expressly indicates that the assignment is intended "to further secure" the La Salle Trust's obligations as mortgagor. Consistent with Illinois law, Inter-American's right to the rents and profits was contingent upon taking possession of the mortgaged premises following a default. (See Collier § 2.03, at 2—88.4 (an assignment clause will be held to be for security purposes if it includes the requirement of taking possession).) Accordingly, the assignment of rents clause did not convey any "ownership" interest in the Jackson property but simply granted an equitable lien as additional security for the mortgage.

Neither *Matot v. Barnheisel* (1918), 212 Ill. App. 489, nor *Kahn v. Deerpark Investment Co.* (1969), 115 Ill. App. 2d 121, 253 N.E.2d 121, provides Ken-Lee support. *Matot* did not involve an assignment of rents clause but merely held that a lessee for 99 years was an owner within the purview of the Act. (*Matot*, 212 Ill. App. at 494.) *Kahn* held that an assignment of rents was subject to the Recording Act. (*Kahn*, 115 Ill. App. 2d at 129.) Therefore, the assignment of rents provision did not confer ownership rights upon Inter-American for purposes of the Act.

Ken-Lee maintains, however, that its mechanic's lien is superior even if Inter-American is simply a mortgagee because the lien was filed within four months of completion of the work, a statutory requirement to effect priority against third parties. (See 770 ILCS 60/7 (West 1992).) Specifically, Ken-Lee claims it filed the lien June 6, 1991, and that it completed the work on July 29, 1991. Although Ken-Lee acknowledges it denoted August 27, 1990, as the date of completion in both its lien and counterclaim, it urges that this was a mistake. Ken-Lee insists that the additional deliveries to Arc extended the date of completion and, therefore, the commencement of the four-month period for filing a lien, from August 27, 1990, to July 29, 1991.

■ An enforceable mechanic's lien claim may be brought by any person who contracts "with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract." (770 ILCS 60/1 (West 1992).) The words "knowingly permit" as contained in this statute mean being aware of and consenting to the improvements. (See *Armco Steel Corp. v. La Salle National Bank* (1975), 31 Ill. App. 3d 695, 698, 335 N.E.2d 93.) In order to establish priority over third parties, the lien must be filed within four months after completion of the work. (770 ILCS 60/7 (West 1992).) Thereafter, trivial work in the nature of repairs or minor changes will not extend the time for filing a lien; substantial

work done at the request or demand of the owner, however, will extend the date of completion. *Du Page Bank & Trust Co. v. Du Page Bank & Trust Co.* (1984), 122 Ill. App. 3d 1015, 1021, 462 N.E.2d 25. See also *Decatur Bridge Co. v. Standart* (1917), 208 Ill. App. 592; *Alexander Hendry Co. v. Mooar* (1926), 242 Ill. App. 516.

■ In the instant case, Ken-Lee's notice of lien as well as its counterclaim both designate August 27, 1990, as the date it completed performance under the contract. Neither Jackson/Green, the beneficial owner of the premises, nor TKO, the construction manager, "authorized or knowingly permitted" any additional work after this date. Ken-Lee's deliveries after August 27, 1990, were additional work performed pursuant to its separate agreement with Arc and cannot extend the date of completion. Accordingly, Ken-Lee's lien does not have priority over Inter-American's lien since it was filed more than four months after completion of the work. The circuit court did not err in denying Ken-Lee's motion for summary judgment.

## III

Ken-Lee submits the circuit court erred in denying it leave to amend its counterclaim to change the last date of performance from August 27, 1990, to July 29, 1991.

■ The decision to permit or deny an amendment rests within the sound discretion of the circuit court and will not be disturbed on review absent a manifest abuse of that discretion. (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211; *Talas v. Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 107, 479 N.E.2d 1052.) Among the factors to be considered in deciding that discretion was properly exercised are whether the proposed amendment would cure the defective pleading, would cause prejudice or surprise to the other party, was timely sought, and previous opportunities to amend the pleadings could be identified. (*Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 377, 437 N.E.2d 774; *Talas*, 134 Ill. App. 3d at 107.) The test to be applied in the circuit court's exercise of discretion may be measured by determining whether allowance of the amendment furthers the ends of justice. *Trans World Airlines, Inc. v. Martin Automatic, Inc.* (1991), 215 Ill. App. 3d 622, 628, 575 N.E.2d 592.

■ Here, Ken-Lee's proposed amendment, made two years after it filed its notice of lien and one year after its counterclaim, is merely an attempt to avoid the unfavorable effect of the Act, which gives Inter-American's mortgage lien priority. The proposed amendment would not cure the defects in Ken-Lee's pleading because, as previously discussed, the undisputed facts indicate that August 27,

1990, was the last date of performance of its contract with TKO. Ken-Lee cannot use the additional, unauthorized work for Arc to extend the time for filing its lien. The circuit court properly denied the proposed amendment and Ken-Lee's attempt to avoid an adverse ruling under the Act. See *Hoffman v. Nustra* (1986), 143 Ill. App. 3d 259, 271, 492 N.E.2d 981.

For the reasons set forth above, we affirm the decision of the circuit court.

Affirmed.

DiVITO, P.J., and McCORMICK, J., concur.