# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***City of Decatur, Illinois v. Ballinger*, 2013 IL App (4th) 120456**

| | |
|---|---|
| Appellate Court Caption | THE CITY OF DECATUR, ILLINOIS, a Municipal Corporation, Plaintiff-Appellee, v. DENNIS BALLINGER, Defendant-Appellant, and JOSEPH E. ABBOTT; VIRGINIA S. ABBOTT; MACON COUNTY, as Trustee; and INTERSTATE FUNDING, Defendants.–THE CITY OF DECATUR, ILLINOIS, a Municipal Corporation, Plaintiff-Appellee, v. DENNIS BALLINGER, Defendant-Appellant, and TAMMY C. MICKLE; PATRICIA M. PERRY; and MACON COUNTY, as Trustee, Defendants. |
| District & No. | Fourth District<br>Docket Nos. 4-12-0456, 4-12-0500 cons. |
| Filed | April 16, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant was an owner of properties demolished by plaintiff city and the judgments holding defendant liable for the costs of the demolition of the improvements on the properties were affirmed, regardless of the "agreement for deed" by which he was to convey the properties to third parties, since defendant clearly retained an interest in the properties under the agreements, he had the right to regain possession if the third parties did not comply with the agreements, and he had the right to cure the conditions that gave rise to the city's decision to demolish the improvements. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, Nos. 06-MR-189, 09-MR-239; the Hon. Albert G. Webber, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Mark S. Morthland (argued), of Moore, Susler, McNutt & Wrigley, LLC, of Decatur, for appellant.

John T. Robinson (argued), Assistant Corporation Counsel, of Decatur, for appellee.

Panel

JUSTICE TURNER delivered the judgment of the court, with opinion.

Justices Pope and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1    In these consolidated appeals, defendant, Dennis Ballinger, appeals two Macon County circuit court judgments finding in favor of plaintiff, the City of Decatur, Illinois (City), and holding Ballinger liable for demolition costs for improvements on two pieces of property in the City. Case No. 06-MR-189 (case 189) addressed the property commonly known as 803 East Lawrence Street, Decatur, Illinois (Property A), and had the following additional named defendants: Joseph E. Abbott; Virginia S. Abbott; Macon County, as trustee; and Interstate Funding. Case No. 09-MR-239 (case 239) involved the property commonly known as 1079 West Cerro Gordo, Decatur, Illinois (Property B), and had the following additional named defendants: Tammy C. Mickle, Patricia M. Perry; and Macon County, as trustee.

¶ 2    Ballinger appeals the two judgments, asserting (1) genuine issues of material fact exist in case 189 that prohibit the entry of summary judgment, and (2) the trial court erred by finding him liable for the demolition costs in both cases. We affirm.

¶ 3                                I. BACKGROUND
¶ 4                                 A. Case 189
¶ 5    Pursuant to a November 1994 tax deed, Ballinger took title to Property A. In January 2002, Ballinger entered into an "agreement for deed" to sell Property A to Joseph and Virginia Abbott. In August 2003, the Abbotts stopped making payments to Ballinger and filed a petition for bankruptcy. The bankruptcy petition named Ballinger as a creditor and stated the Abbotts' intention to surrender Property A to Ballinger. In December 2003, the Abbotts received their discharge in the bankruptcy case. In May 2004, Ballinger recorded a quitclaim deed purporting to convey Property A to the Abbotts. On July 23, 2004, the Abbotts recorded an affidavit of disclaimer, stating they disclaimed any interest in Property A. On July 30, 2004, the City notified Ballinger and the Abbotts Property A was unfit for human habitation.

¶ 6    In a separate case, the City filed an October 2004 complaint against Ballinger and the

Abbotts, asserting an ordinance violation on Property A. City of Decatur v. Abbott, No. 04-OV-943 (Cir. Ct. Macon Co.). In March 2005, the Macon County circuit court granted the City's motion to voluntarily dismiss Ballinger from the case. In December 2005, the court entered an order, finding Ballinger's quitclaim deed to the Abbotts was not (1) a completed gift of Property A to the Abbotts and (2) undertaken to comply with the terms of the agreement for deed. Thus, the court concluded the Abbotts had no ownership interest in Property A.

¶ 7        In March 2006, the City filed a complaint for demolition of the improvements on Property A at issue in this appeal. In addition to Ballinger and the Abbotts, the complaint listed Macon County, as trustee, and Interstate Funding as defendants because they held liens on Property A. The next month, Ballinger filed a motion to dismiss the City's complaint. The Abbotts also filed a response to the complaint, including an affirmative defense and affidavit. In May 2006, the trial court denied Ballinger's motion to dismiss. In October 2006, the City moved for summary judgment. In September 2007, the trial court held a hearing on the motion for summary judgment, at which the court took judicial notice of the 2004 ordinance violation case. At the conclusion of arguments, the court took the matter under advisement and allowed the parties to file written closing arguments. In October 2007, the court granted summary judgment in favor of the City, establishing Ballinger's responsibility to reimburse the City for the demolition costs associated with Property A. The October 2007 judgment did not address the amount of the demolition costs. On April 26, 2012, the court entered a $4,265 judgment against Ballinger for the demolition costs on Property A.

¶ 8        On May 16, 2012, Ballinger filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303(b) (eff. May 30, 2008). Thus, this court has jurisdiction of case 189 under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).


¶ 9                                          B. Case 239

¶ 10        Pursuant to a May 1999 tax deed, Ballinger took title to Property B. In September 2003, Ballinger entered into an "agreement for deed" to sell the Property B to defendants Mickle and Perry. On June 29, 2007, Ballinger filed a complaint for forcible entry and detainer against Mickle and Perry. Ballinger v. Mickle, No. 07-LM-609 (Cir. Ct. Macon Co.). On August 5, 2008, Perry executed a quitclaim deed, conveying her interest in Property B to Mickle. On August 28, 2008, the Macon County circuit court entered a judgment in the forcible entry and detainer case. The court concluded Mickle and Perry were in default under the terms of the September 2003 agreement. It entered a $31,094.17 default judgment in favor of Ballinger and against Mickle and a $5,000 judgment in favor of Ballinger and against Perry. The judgment provided Perry was to pay Ballinger $200 per month until the $5,000 judgment was paid in full. The judgment did not address possession of or title to Property B.

¶ 11        In a November 2008 letter, the City notified Mickle the structure located on Property B was unfit for human habitation and had to be vacated by December 15, 2008. In a letter dated December 23, 2008, the City gave notice to Ballinger and Mickle the structure on Property B was dangerous and unsafe or uncompleted and abandoned. The letter declared that, if the

structure was not put into a safe condition within 15 days, the City would abate the violation at their costs.

¶ 12    On April 6, 2009, the City filed its complaint for demolition of the structure on Property B, noting the costs of repairing the structure were much greater than its fair market value. The complaint listed Ballinger, Perry, and Mickle as defendants as well as the lienholder Macon County, as trustee. In May 2009, the City and Macon County stipulated Macon County would consent to the demolition but would not be held liable for any demolition costs. On September 2, 2009, the trial court entered a default judgment in favor of the City and against defendants Ballinger and Perry, requiring them to pay the costs of demolition. The court found Mickle in default but did not enter judgment against her. On September 8, 2009, Ballinger filed a motion to vacate the default judgment, asserting he had no legal interest in the property at issue. On November 25, 2009, the court entered a judgment, authorizing the demolition but reserving the issue of responsibility for reimbursement of the City's costs.

¶ 13    In August 2010, the City filed a motion to establish responsibility for the City's demolition expenses. That same month, the trial court held a hearing, and Perry and Mickle failed to appear. Thus, the court entered a default judgment in the amount of $3,815.50 in favor of the City and against Perry and Mickle.

¶ 14    In November 2011, Macon County, as trustee, took title to Property B pursuant to a tax deed.

¶ 15    After numerous continuances, the trial court heard arguments on the City's motion to establish responsibility for the demolition costs in April 2012. In addition to arguments, the City presented 12 exhibits. At the conclusion of the hearing, the court took the matter under advisement. On May 16, 2012, the court entered a lengthy docket entry, finding Ballinger had been and remained the titleholder to Property B and Mickle's and Perry's equitable interests had been extinguished. Thus, the court concluded Ballinger was the only owner of Property B under section 11-31-1(a) of the Illinois Municipal Code (Code) (65 ILCS 5/11-31-1(a) (West 2006)). Accordingly, the court entered a $3,815.50 judgment against Ballinger for the demolition costs associated with Property B.

¶ 16    On May 30, 2012, Ballinger filed a timely notice of appeal in sufficient compliance with Rule 303(b), and thus, this court also has jurisdiction of case 239 under Rule 301.

¶ 17                                    II. ANALYSIS

¶ 18    In case 189, Ballinger first asserts material questions of fact remain that require the reversal of summary judgment in that case. We thus address that issue first.

¶ 19                          A. Summary Judgment in Case 189

¶ 20    Ballinger argues the trial court erred by granting summary judgment because the facts are disputed as to whether (1) the Abbotts had "knowledge" of the 2004 quitclaim deed, (2) the Abbotts breached the agreement for deed, and (3) the property became dilapidated and required demolition during the Abbotts' possession of Property A. The City disagrees a

-4-

material question of fact remains and notes the Macon County circuit court's December 2005 ruling in the ordinance violation case (City of Decatur v. Abbott, No. 04-OV-943 (Cir. Ct. Macon Co.)).

¶ 21    A grant of summary judgment is only appropriate when the pleadings, depositions, admissions, and affidavits demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006); *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 8-9 (2008). "A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Williams*, 228 Ill. 2d at 417, 888 N.E.2d at 9. The moving party bears the burden of proof and the initial burden of production. *Colburn v. Mario Tricoci Hair Salon & Day Spas, Inc.*, 2012 IL App (2d) 110624, ¶ 33, 972 N.E.2d 266. "If the moving party meets the initial burden of production, then the burden of production shifts to the nonmoving party, who must then present some factual basis that would arguably entitle it to judgment as a matter of law." *Colburn*, 2012 IL App (2d) 110624, ¶ 33, 972 N.E.2d 266. We review *de novo* the trial court's ruling on a motion for summary judgment. See *Williams*, 228 Ill. 2d at 417, 888 N.E.2d at 9.

¶ 22    As the City notes, the judgment in the 2004 ordinance violation addressed the Abbotts' breaching of the agreement for deed and the validity of Ballinger's 2004 quitclaim deed. In this case, the trial court found the ownership of Property A after the 2004 quitclaim deed had already been adjudicated and was *res judicata*. On appeal, Ballinger does not challenge the court's application of the doctrine of *res judicata* or its taking judicial notice of the 2004 ordinance violation case. Thus, the facts already determined in the 2004 ordinance violation case are not questions of fact in this case. The first two contentions raised as questions of material fact by Ballinger were clearly decided in the 2004 case. Moreover, in an affidavit, the Abbotts state they stopped making payments on the agreement for deed in August 2003 and surrendered the property back to the seller. Ballinger did not submit any material to the contrary. Thus, the undisputed facts in this case show the Abbotts breached the agreement for deed, and thus Ballinger's 2004 quitclaim deed was not in fulfillment of the agreement.

¶ 23    As to whether the Abbotts were in possession of Property A when it became dilapidated and required demolition, that matter is not material to the issue of Ballinger's liability under section 11-31-1(a) of the Code as explained in the next section. Accordingly, we conclude Ballinger has not raised any material questions of fact that would preclude the entry of summary judgment in case 189.

¶ 24            B. "Owner" Under Section 11-31-1(a) of the Code

¶ 25    Ballinger contends the trial court erred by finding him liable for the demolition costs for the improvements on Property A and Property B because he no longer held an ownership interest in the two properties when he entered into the two agreements for deed. The City responds Ballinger was the owner of the two properties under section 11-31-1(a) of the Code. Case 189 involves a summary judgment, and thus, as stated, our review is *de novo*. See *Williams*, 228 Ill. 2d at 417, 888 N.E.2d at 9. In case 239, the only evidence before the trial

court was documentary, and in such situations, reviewing courts also apply a *de novo* standard of review. See *Eastern Savings Bank, FSB v. Flores*, 2012 IL App (1st) 112979, ¶ 7, 977 N.E.2d 242. Additionally, we note this issue raises a matter of statutory construction, which is reviewed *de novo*. See *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23, 962 N.E.2d 956. Accordingly, we review the matter *de novo.*

¶ 26 Section 11-31-1(a) of the Code (65 ILCS 5/11-31-1(a) (West 2006)) grants municipalities the power to demolish, repair, or enclose dangerous and unsafe buildings within the municipalities' boundaries. That section also addresses the costs of such work and provides, in pertinent part, the following:

"The cost of the demolition *** incurred by the municipality, *** including court costs, attorney's fees, and other costs related to the enforcement of this Section, is recoverable from the owner or owners of the real estate or the previous owner or both if the property was transferred during the 15 day notice period and is a lien on the real estate ***." 65 ILCS 5/11-31-1(a) (West 2006).

At issue in this case is whether Ballinger is an owner of Property A and Property B (collectively the Properties). The Code does not define the term "owner," and thus we employ statutory construction.

¶ 27 The fundamental rule of statutory construction requires courts to ascertain and give effect to the legislature's intent. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 180, 950 N.E.2d 1136, 1146 (2011). The statutory language, given its plain and ordinary meaning, best indicates the legislature's intent. *Pappas*, 242 Ill. 2d at 180, 950 N.E.2d at 1146. In interpreting a statutory provision, courts evaluate the statute as a whole, "with each provision construed in connection with every other section." *Pappas*, 242 Ill. 2d at 180, 950 N.E.2d at 1146. When the statutory language is clear and unambiguous, a court must give effect to the statute's plain meaning without resorting to extrinsic statutory-construction aids. *Pappas*, 242 Ill. 2d at 180, 950 N.E.2d at 1146.

¶ 28 Black's Law dictionary defines "owner" as follows: "One who has the right to possess, use, and convey something; a person in whom one or more interests are vested. • An owner may have complete property in the thing or may have parted with some interests in it (as by granting an easement or making a lease)." Black's Law Dictionary 1214 (9th ed. 2009). However, our supreme court has frequently recognized that in the context of land, the term "owner" lacks a fixed meaning that can apply " 'under all circumstances and as to any and every enactment.' " *In re Petition to Annex Certain Real Estate to the City of Joliet*, 144 Ill. 2d 284, 288, 579 N.E.2d 848, 849 (1991) (quoting *Coombs v. People*, 198 Ill. 586, 588, 64 N.E. 1056, 1057 (1902)). Neither party cites any case law defining "owner" in the context of section 11-31-1(a) of the Code. However, the City asserts we should look to the Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 2010)) and case law addressing the interpretation of "owner" under that act. Ballinger did not file a reply brief and thus did not address the City's assertion we should look to the Mechanics Lien Act. The cases cited by Ballinger in his appellant brief address when a *buyer* under a contract is considered an owner under various statutes and causes of action. He also claims, without citation to authority, the seller under a contract for deed is akin to a trustee under an Illinois land trust.

¶ 29    At oral arguments, the City raised the case of *City of Chicago v. Mandoline*, 26 Ill. App. 2d 480, 481, 168 N.E.2d 784, 785 (1960), where the City of Chicago brought an ordinance violation against both the seller and buyer of the property under an agreement for a warranty deed. The trial court found the seller of the property guilty of the ordinance violation, but not the buyer. *Mandoline*, 26 Ill. App. 2d at 481, 168 N.E.2d at 785. On appeal, the seller argued he was not an owner under the ordinance. *Mandoline*, 26 Ill. App. 2d at 483, 168 N.E.2d at 786. The ordinance at issue held a broad range of individuals liable for a violation of it, including the following: the owner; the owner's agent for purpose of managing or controlling the building; any other person in control of or managing the building; any person entitled under an agreement to control or direct the management or disposition of the building; and a trustee of land trust unless the enumerated exception applied. *Mandoline*, 26 Ill. App. 2d at 483, 168 N.E.2d at 786. The Second District found that, under the language of the ordinance, the seller was liable (1) as an owner of the building at issue and (2) as the party in complete control of the property under the provisions of the agreement for warranty deed. *Mandoline*, 26 Ill. App. 2d at 484, 168 N.E.2d at 786. The court explained that, under the terms of the agreement, the buyer only received the right to occupy the premises as long as he made his monthly payments and had no control until he received the deed. *Mandoline*, 26 Ill. App. 2d at 483-84, 168 N.E.2d at 786.

¶ 30    Ballinger notes the First District's decision in *Cox v. Supreme Savings & Loan Ass'n*, 126 Ill. App. 2d 293, 298, 262 N.E.2d 74, 77 (1970), which found *Mandoline* was not controlling. There, the contract buyers sought to require the contract seller of an apartment building to do the work necessary to remedy building code violations brought in a separate case. *Cox*, 126 Ill. App. 2d at 294, 262 N.E.2d at 75. The trial court applied the doctrine of equitable conversion and found in favor of the contract seller. *Cox*, 126 Ill. App. 2d at 295, 262 N.E.2d at 75-76. The First District noted the contract for deed in *Mandoline* was not controlling in *Cox* because the language of the contracts was very different. *Cox*, 126 Ill. App. 2d at 297, 262 N.E.2d at 77. In *Cox*, the buyer's rights "far exceeded the right to possession only" where the buyers could exercise all of the rights of an owner, perform all of the duties of an owner, and were prohibited only from making major or capital improvements without authority of the seller. *Cox*, 126 Ill. App. 2d at 297, 262 N.E.2d at 77. The *Cox* court did not address the language of the ordinances that were violated.

¶ 31    We disagree with Ballinger the First District court's *Cox* decision indicates the *Mandoline* decision was wrongly decided. The language of the contracts for deeds in the two cases gave their respective buyers vastly different rights. Thus, the *Mandoline* decision provided no guidance to the court in *Cox*. Moreover, the buyer's status as owner, which was at issue in *Cox* and seemingly the point of the discussion of the contract language in *Mandoline*, is not at issue here. While the language of the ordinance in *Mandoline* is very different from the language of section 11-31-1(a) of the Code (65 ILCS 5/11-31-1(a) (West 2006)), the decision makes clear the contract seller was still the owner of the building and liable under the ordinance's use of the term "owner." Thus, *Mandoline* does support the finding Ballinger is an owner of the Properties.

¶ 32    Likewise, the City's argument regarding the Mechanics Lien Act also supports the conclusion Ballinger is an owner of the Properties. Illinois courts have recognized the

similarity between section 11-31-1 of the Code and the Mechanics Lien Act and have used the interpretations of the Mechanics Lien Act as guidance for interpreting section 11-31-1. See *Village of Franklin Park v. Aragon Management, Inc.*, 298 Ill. App. 3d 774, 777, 699 N.E.2d 1053, 1054-55 (1998) (citing *City of Peru v. Bernardi*, 81 Ill. App. 3d 227, 232, 401 N.E.2d 1, 4 (1980)). "Under section 1 of the [Mechanics Lien] Act, a mechanic's lien extends to an estate in fee, for life, for years, or any other estate or any right of redemption, or other interest which the owner may have at the time of making such contract or may subsequently acquire." *M. Ecker & Co. v. La Salle National Bank*, 268 Ill. App. 3d 874, 878, 645 N.E.2d 335, 339 (1994) (citing 770 ILCS 60/1 (West 1992)). Thus, under the Mechanics Lien Act, the term "owner" means "any person with an estate, right of redemption or other interest in the land." *Matanky Realty Group, Inc. v. Katris*, 367 Ill. App. 3d 839, 842, 856 N.E.2d 579, 583 (2006); see also *M. Ecker & Co.*, 268 Ill. App. 3d at 878, 645 N.E.2d at 339. We recognize section 1 of the Mechanics Lien Act was amended after the aforementioned case law. See 770 ILCS 60/1 (West 2006) (containing the changes made by Pub. Act 94-627 (eff. Jan. 1, 2006)). However, the purpose of the amendment was just to clarify the language and codify existing case law. See *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 355, 887 N.E.2d 474, 498-99 (2008) (quoting 94th Ill. Gen. Assem., House Proceedings, May 31, 2005, at 17-18 (statements of Representative Scully)).

¶ 33　　　With installment land sale contracts under the Mechanics Lien Act, Illinois courts have held the seller is an owner, not a lienholder. *Construx of Illinois, Inc. v. Kaiserman*, 345 Ill. App. 3d 847, 853-57, 800 N.E.2d 1267, 1273-76 (2003) (citing *Hickox v. Greenwood*, 94 Ill. 266 (1880); *Henderson v. Connelly*, 123 Ill. 98, 14 N.E. 1 (1887); *Paulsen v. Manske*, 126 Ill. 72, 18 N.E. 275 (1888)). However, the seller's interest in the property is only subject to the mechanics lien when the seller agrees and authorizes the buyer to make improvements to the property. *Construx*, 345 Ill. App. 3d at 855, 800 N.E.2d at 1274. Additionally, we note this court has rejected the argument the doctrine of equitable conversion as discussed in *Shay v. Penrose*, 25 Ill. 2d 447, 185 N.E.2d 218 (1962), abrogated the supreme court's decisions in *Hickox*, *Henderson*, and *Paulsen*. *Construx*, 345 Ill. App. 3d at 856-57, 800 N.E.2d at 1275-76.

¶ 34　　　We agree with the prior decisions concluding the Code and the Mechanics Lien Act are similar because, like the contractor with a mechanics lien, a municipality under section 11-31-1(a) of the Code seeks to recover costs for work done on improvements to real estate. Moreover, the Mechanics Lien Act's analysis of "owner" in the case of installment land sale contracts logically applies to section 11-31-1(a) as well. Anyone who has an interest in the property at issue under section 11-31-1 benefits from the work done by the municipality as it is work that the owner needed to do for safety reasons. Further, like with the Mechanics Lien Act, the seller under the contract must have knowledge of the municipality's intent to abate a nuisance under section 11-31-1(a) for it to be responsible for the costs of the work done under that section. By being aware and doing nothing about the situation, the seller implicitly agreed to the municipality's work just as a seller under the Mechanics Lien Act.

¶ 35　　　Moreover, the facts of this case illustrate why the Mechanics Lien Act's analysis is appropriate for section 11-31-1(a). Under the agreements between Ballinger and the buyers, Ballinger clearly retained an interest in the Properties. First, Ballinger was not to convey title

to the Properties until the buyers performed the conditions contained in the agreements. Second, the agreements required the buyers to maintain all improvements on the property in reasonably good repair, and Ballinger had the right to enforce the agreements according to its terms or issue a notice of acceleration, which if not complied with gave him the right to reenter and regain possession of the premises. Third, Ballinger had the right to pay taxes, special assessments, insurance premiums, or repair bills if the buyer failed to do so and add any amounts paid on such things to the principal amount due under the agreements. Accordingly, under the agreements, Ballinger could take action to address the conditions that gave rise to the need for demolition. Thus, we disagree with Ballinger's suggestion the term "owner" in section 11-31-1(a) of the Code should be limited to a person in physical possession and control of the property.

¶ 36       Additionally, we emphasize our statements in *Construx* that " '[t]he doctrine of equitable conversion is a fiction, and its application is limited to the extent necessary to accomplish equity.' " *Construx*, 345 Ill. App. 3d at 856, 800 N.E.2d at 1275 (quoting *City of Chicago v. Salinger*, 384 Ill. 515, 520, 52 N.E.2d 184, 187 (1943)). Ballinger cites no cases where the doctrine of equitable conversion has been applied to find the seller under an installment land sale contract is no longer an owner of the property before the buyer has fulfilled the contract. Further, it is illogical a seller under an installment contract would lose all interest in the property subject to the contract before the buyer fulfilled the contract terms since the buyer could default on the contract and lose all rights to the property. Moreover, equity favors the municipality being able to recover demolition costs related to unsafe structures from all entities with an ownership interest in the property.

¶ 37       Regardless of any equitable conversion that resulted from the agreements for deed, Ballinger retained title to the Properties and had an interest in the Properties he contracted to sale with the buyers. Since the contracts were never fulfilled and the 2004 quitclaim deed has been declared a nullity, Ballinger never lost his interest in the Properties and had that interest when the City issued its notices about the unsafe conditions on the Properties. Thus, we hold Ballinger was an owner of the Properties as defined in section 11-31-1(a) of the Code.

¶ 38       Last, we note Ballinger had notice of the City's intent to demolish the improvements at issue in these cases, and thus the trial court properly found him liable for the demolition costs under section 11-31-1(a) of the Code.

¶ 39                                    III. CONCLUSION
¶ 40       For the reasons stated, we affirm the Macon County circuit court's judgment in both cases.

¶ 41       Affirmed.