*In re* ESTATE OF CLEMENT L. STOKES, Deceased (Lois Botsford, Plaintiff-Appellee, v. Leo Stokes, Defendant-Appellant).

Fourth District   No. 4—91—0475

Opinion filed January 31, 1992.

David B. Radley, of Baymiller, Christison, Radley & Covey, of Peoria, for appellant.

G. Patrick Riley, of Harrod Law Firm, of Eureka, for appellee.

JUSTICE LUND delivered the opinion of the court:

Coexecutor Leo Stokes (defendant) appeals a trial court ruling which (1) set aside a family settlement agreement and deeds executed according to its terms; (2) ordered the executor to pay the estate all proceeds from sales of the real estate plus interest, less a credit for satisfaction of estate debts; (3) ordered the farm machinery reconveyed by defendant to the estate; and (4) removed defendant from his office. On appeal, defendant claims that the trial court based its ruling on the erroneous belief that title to the real estate did not pass to the devisees when the will was admitted to probate, that the recitations contained in a divestiture petition filed by defendant were true, and that the court erred in setting aside the deeds from two devisees who were not parties to the action.

Clement Stokes died testate on December 31, 1987. His will left his residence to his wife Madelyn and the residuary to his four children—defendant, Lois Botsford (plaintiff), Edward Stokes, and Irene Douglas—in equal shares. The will was admitted to probate on February 11, 1988, and Madelyn and defendant were appointed coexecutors. They hired the Roanoke law firm of Huschen & Huschen to represent them.

The residue consisted of two tracts of unimproved land approximately one-half mile apart. Tract No. 1, 126.13 acres, contained 30 acres of pasture and 96.13 acres of timber. Part of tract No. 1 was platted in 1950 for 20 residential lots. Since that time, only one sale consisting of four lots was made to be used for a single-family home. The remainder of tract No. 1 was unimproved and used only as pasture for the 37 years prior to testator's death.

Tract No. 2 is a six-acre parcel which was platted into 16 lots in 1978. Tract No. 2 had no sewers and no lots had been sold, although attempts have been made to do so. The First Bank and Trust Company of Gridley (Bank) held a mortgage on tract No. 2, for approximately $62,000.

The estate's attorneys obtained appraisals of tract No. 1 from Harold Zobrist, a licensed real estate broker and auctioneer. He valued tract No. 1 at $35,280, or $280 per acre. Zobrist believed 20 acres to be pastureland, and the remainder to be very rough, containing second-growth timber, gullies, and brush.

An appraisal of the 16 lots (six acres) comprising tract No. 2 was obtained from Mickey DeWitt. He valued tract No. 2 at $4,200 per lot ($67,000), if sold as such, or $1,500 per acre ($9,000), if sold as an entire tract.

Plaintiff, with the coexecutors' permission, directed the estate attorneys to hire Arthur Korte to do a second appraisal of tract Nos. 1 and 2. Korte found tract No. 1 to contain 30 acres of good grassland valued at $800 per acre ($24,000), and 96.13 acres of rough, rolling timberland valued at $150 per acre ($14,419.50). He appraised tract No. 1 at $38,419.50. Tract No. 2 was six acres of grassland valued at $1,000 per acre ($6,000). The value of both tracts totaled $44,419.50. These values were based on Korte's belief that the highest and best use of both tracts was as pastureland. Plaintiff had believed the total value of the two tracts to be $145,000.

The attorneys for the coexecutors then obtained an appraisal of the farm machinery from Lewis Martin. He valued the farm machinery at a total of $5,900.

During administration of the estate, defendant filed a claim against the estate totalling $22,538.11. The claim consisted of $6,785.42, which he paid to return his dying father from Texas to Illinois via air ambulance, $6,488 for farm expenses on his father's farm in 1987, and $9,264.69 for an acreage discrepancy involving a prior real estate transaction between him and his father.

Attorney B.H. Huschen wrote plaintiff to tell her the estate was virtually insolvent and the Bank would surely foreclose on the mortgage. Huschen advised plaintiff that the Bank could get a deficiency decree and take Madelyn Stokes' home to satisfy the deficiency.

After extensive correspondence and negotiations, the parties reached an agreement. First, defendant would satisfy the mortgage due the Bank. Second, he would release his claim against the estate. Third, defendant would take title to the farm machinery. Finally, the other three sibling devisees would deed their interests in both tracts to defendant.

Edward Stokes and Irene Douglas both executed warranty deeds conveying their interest in the property to defendant (signatures notarized), and returned the deeds to the estate's attorney. Plaintiff executed her deed to defendant (signature notarized), but she crossed out the warranty language. She sent this deed to Huschen on September 20, 1988. Plaintiff also sent a letter along with her executed deed, which read, in pertinent part:

"9. The three tracts have been appraised only for agricultural purposes and are purchased for that basis only.

The acceptance and recording of this deed shall constitute an acceptance by the Estate and Leo of these representations and that the probate of the estate shall be concluded as has been represented. In the event there is any deviation from

what has been represented, the consideration for this deed will fail."

The letter also alleged that Huschen had coerced and misled her into conveying her interest in the real estate to defendant.

After receiving the deeds, defendant satisfied the mortgage held by the Bank. A release of the Bank's claim was filed on November 22, 1988. Defendant executed a release of his claim against the estate, but that release was not filed with the circuit clerk. The deeds from the three heirs to defendant were recorded on November 23, 1988. At trial, defendant testified that on October 3, 1988, he first had a conversation with Mr. and Mrs. Johnson about sale of part of tract No. 1. He subsequently sold them 20 acres of pastureland, pursuant to an agreement entered into on October 29, 1988, for $40,000. On November 11, 1988, counsel for the coexecutors filed a petition for divestiture of the two tracts of land. No notice was given to any of the heirs. On that same date, an order was entered by the court granting the petition. The petition alleged that the real estate was to be sold by the heirs and not by the estate and that the real estate would not be needed for the payment of claims, administration expenses, taxes, or legacies. Sometime after the order of divestiture was entered, the sale by defendant to the Johnsons was completed.

On May 4, 1989, defendant sold one of the lots in tract No. 2 for $4,500. On June 12, 1989, he sold another lot in that tract for $7,000.

After plaintiff learned of these sales, she filed an objection to the coexecutors' final account, objecting to the settlement agreement. No objections or appearances were filed by Irene Douglas or Edward Stokes. They were given notice of filing of the final account and of plaintiff's objection thereto, but the record is unclear as to whether they received notice of any of the proceedings which followed.

Plaintiff's objection contained three counts: count I alleged actual fraud; count II alleged defendant had breached his fiduciary duty as coexecutor, and count III was a complaint for a constructive trust. On defendant's motion, the trial court dismissed this last count and plaintiff filed an amended count III. This count alleged that the representations made in the petition for divestiture were untrue and that without the value of the land divested, there were insufficient assets in the estate to pay either the claims of defendant or of the Bank. It also alleged that no notice was given to the heirs of the hearing on the petition. It asked for judgment against defendant for the proceeds of sale of the 20 acres and the two lots, that the deeds executed in pursuance of the family settlement agreement be set aside, that defendant be removed as coexecutor, for restoration to the estate of

the farm machinery defendant had received, for the establishment of a constructive trust to hold the proceeds of sale of the real estate received by defendant and for the denial of executor's fees to defendant.

Defendant filed an answer to this amended count III, alleging the representations made by the petition for divestiture were true because defendant was bound by the family settlement agreement to pay the Bank's claim and to release his own claim against the estate, both of which defendant had done. He also alleged that no notice to plaintiff of the hearing on the divestiture petition was necessary because she had previously delivered her deed to defendant of her interest in the real estate and thereby had demonstrated her acquiescence to the entry of the order of divestiture.

Attorney John Huschen testified that his firm was retained by defendant to represent the estate. His office also prepared the deeds sent to defendant's siblings and filed the petition for divestiture of the real estate from the estate. He stated that he was unaware of any potential buyer of the real estate prior to filing the divestiture petition. Finally, he testified that he only filed the petition to divest because it was required by the title insurer in connection with defendant's real estate sale to the Johnsons.

At the conclusion of the bench trial, the court found in defendant's favor as to count I. Count II was withdrawn by plaintiff after the court ruled in her favor as to count III.

Defendant first claims on appeal that the trial court based its ruling on the erroneous belief that title to the real estate was vested in the executors. He argues that this view of the law caused the trial court to conclude that notice to the other heirs of the hearing on the divestiture petition was necessary. We agree that the trial court was mistaken on this point.

Defendant argued that no notice was necessary or, if technically necessary, the failure to give it was harmless since the other devisees had conveyed the property to defendant prior to divestiture. After hearing this argument, the court stated:

> "THE COURT: *** They didn't hold any interest in this property at that point in time. Would you concede that, or do you think they did?
>
> MR. RADLEY [Defense attorney]: I think they did subject to any claim of the executor, and I think that's why up until recently the title conditions didn't even bother to require this procedure of divestiture. I think it's—

THE COURT: By what mechanism would they have been a part of the title to this property on the date that they executed these deeds?

MR. RADLEY: Well, the property was left to them by virtue of the will. I think the—

THE COURT: You mean they were some kind of survivorship owners?

MR. RADLEY: Well, I think the will left everything to the four of them in equal shares, speaking from memory, so I think there were four owners of the real estate. True, subject to the possibility that the executor would petition to sell to pay debts, but subject to that I think they were the four owners of the property.

THE COURT: Do you have any authority that would support that proposition?

MR. RADLEY: I don't have it with me, Your Honor, because I didn't know it would be an issue. But I'll—

THE COURT: Mr. Riley certainly has raised it.

MR. RADLEY: I would be happy to submit authority.

THE COURT: That in effect they're title holders of some undivided what, undivided one-fourth or something while the estate is in probate?

MR. RADLEY: Yes. Subject to the possibility—

THE COURT: Do you agree with that, Mr. Riley?

MR. RILEY [counsel for plaintiff]: No.

THE COURT: Okay. I didn't think he did. I'll need your authority. That's news to me, but I will be glad to look at your authority."

■ It is well settled that, upon the admitting of a will to probate, title to real estate vests in the devisees. (*Craig v. Trotter* (1911), 252 Ill. 228, 230, 96 N.E. 1003, 1004; *Epley v. Epley* (1927), 244 Ill. App. 237, 237.) Once admitted to probate, the will is considered valid for vesting title to the realty in the devisees. (*Scott v. Scott* (1989), 179 Ill. App. 3d 489, 492, 534 N.E.2d 174, 176, citing *Stull v. Veatch* (1908), 236 Ill. 207, 86 N.E. 227; *Havill v. Havill* (1928), 332 Ill. 11, 163 N.E. 428.) As stated in *Scott*:

" 'A will speaks from the death of the testator. At the moment of his death the rights of his heirs and devisees to succeed to his estate are fixed and vested * * *. * * *
        * * *
* * * The effect of the probate of a will is to vest the title in the devisee as completely as a deed from the owner of property

vests the title in his grantee and is subject to no greater contingency.' " *Scott*, 179 Ill. App. 3d at 492, 534 N.E.2d at 176, quoting *Havill*, 332 Ill. at 15-16, 163 N.E. at 429-30.

■ Administrators of estates take no title or interest in the real estate of a decedent, except naked power to sell it if the estate assets are insufficient to satisfy debts. (*People v. Weinstein* (1968), 105 Ill. App. 2d 1, 6, 245 N.E.2d 788, 790.) Given the above authority, it is clear that the trial court had an erroneous understanding of the law. Title vested in the devisees on February 11, 1988, when the will was admitted to probate, subject only to the coexecutors' right to sell it to pay claims and expenses.

Defendant next contends that the recitations in the divestiture petition were true. Defendant sought to divest the estate of the property conveyed to him by deeds from the devisees in return for the consideration outlined above. The divestiture petition stated, in pertinent part:

> "Said real estate is to be sold by the individual beneficiaries and not by the estate, pursuant to Chapter 110½, Section 20—1(c). Neither the real estate nor the income therefrom will be needed for the payment of claims, administration expenses, taxes or legacies."

Count III of plaintiff's objection supplied the basis for the court's ruling. In ruling on count III, the trial court stated its reasons:

> "The presumption in the law is that if such a fiduciary deals with the property of the relationship and benefits from that dealing, the presumption is that the fiduciary relationship has been breached and that what is called fiduciary fraud has occurred.
>
> Now, the use of the term 'fraud' in that context has caused the courts over the years unending difficulty. And therefore, I use it only because the cases use it. I do not consider that to be fraud. But the results, perhaps, are the same. It is clear to me that Mr. Stokes from the beginning of his responsibilities as a fiduciary, if not before that, had an individual interest in acquiring estate property.
>
> Now, the law does not prevent him from having those interests, doesn't prevent him from pursuing them. It does, however, prevent him from pursuing them if ever his pursuit is different than or in conflict with the interests of the estate and/or the beneficiaries of the estate. In this case he happens to be one of them. That does not make it any different.

When he embarks upon that course of activity, be he a lay person, be he uneducated, be he whatever, his actions are subjected to the strictest of scrutiny by the courts. His actions in this case do not survive that scrutiny. In particular, they do not survive it when he accepts deeds from people who, as far as I'm concerned, at that point in time have no interest to convey. They may have a future interest and, therefore, the effort to obtain warranty deeds may have solved that problem.

The problem is that one of these deeds, as best I can tell, is not a warranty deed, does not warrant, at least clearly warrant, the transfer of after-acquired title.

Therefore, assuming for the sake of this discussion that the transfer or transmittal of those deeds, be it a warranty or less than that, transferred to him some conclusion or logical feeling that he did not have to give them notice of the divestiture he, nevertheless, had not legally obtained title to that property up and until the time he requested the divestiture to him. At the time that that was done not only was the estate insufficient after the property was gone to satisfy the debts of the estate, there was not to be a sale of the property by the heirs, second of those two things being the less important of the two inaccuracies contained in the Petition.

Now, the fact that someone is promising to do something in the future and that others are willing to rely upon the hope that that promise is fulfilled does not explain or justify the misrepresentation to the Court, because it is the Court who holds the obligation—which holds the obligation to the decedent that must be satisfied that the decedent's interests are being protected.

[The] court is the last bastion upon which the decedent can rely independent of the activities of the heirs or the representatives. Mr. Stokes, at least it would appear from the evidence, has benefited from his activities in pursuit of his own interests while attempting to act as the fiduciary in this case.

Therefore, with regard to Count III, which I believe most closely approximates that problem, I find the objections to be established."

■ The trial court ruled that the defendant breached his fiduciary duty; however, there were no allegations before the court in count III that support this finding. The only allegations before the court were that defendant improperly failed to notify devisees of the divestiture proceeding, and that defendant misrepresented that the real estate

would not be needed to pay claims of the estate. We decline to decide whether defendant breached his fiduciary duty, as no such allegation was before the court in count III; therefore, it was improper for the trial court to rule on that issue.

Although giving notice to the devisees may have been proper, any error in failing to give such notice was harmless. The devisees conveyed all their interest in the land to defendant. They had no interest in the land to protect. In fact, two of the three devisees did not join plaintiff in her objections.

There was no evidence that defendant made any misrepresentations in his divestiture petition. He stated that the property being divested was not needed to satisfy any claims against the estate. Section 20—1(c) of the Probate Act of 1975 states:

> "Upon petition of any interested person, the court may grant possession of real estate on such terms as it deems appropriate to the heir or legatee thereof, if it appears that the real estate or income therefrom will not be needed for the payment of claims, expenses of administration, estate or inheritance taxes or legacies. An order granting possession of real estate does not constitute a determination of title to the real estate." (Ill. Rev. Stat. 1989, ch. 110½, par. 20—1(c).)

The land was not needed to pay any outstanding claims. Defendant agreed to pay all major outstanding claims, pursuant to the settlement agreement. No claims remained requiring use of the property.

Having decided that the trial court's order granting the prayer of count III must be reversed, we need not reach the question defendant raises concerning the propriety of the court's order as to the interests of Irene Douglas and Edward Stokes.

Reversed.

GREEN, P.J., and COOK, J., concur.