# Illinois Official Reports

## Appellate Court

*In re Application of the Douglas County Treasurer & ex officio County Collector*, 2014 IL App (4th) 130261

| | |
|---|---|
| Appellate Court Caption | In re: The Application of the Douglas County Treasurer and Ex Officio County Collector of Douglas County, Illinois, for Order of Judgment and Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for the Year 2006, DENNIS D. BALLINGER, Petitioner-Appellant, v. DOUGLAS A. MOORE and RICHARD W. MOORE, Not Individually But as Coexecutors of the Estate of JOAN J. COOK, Deceased; CLIFFORD M. JONES; and NANCY H. JONES, Respondents-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-13-0261 |
| Filed | January 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for respondents in their action to set aside the tax deed acquired by petitioner, since he failed to make a "diligent inquiry" as to persons with an ownership interest in the property as required by section 22-45 of the Property Tax Code. |
| Decision Under Review | Appeal from the Circuit Court of Douglas County, No. 07-TX1-17; the Hon. Michael G. Carroll, Judge, presiding. |
| Judgment | Affirmed and remanded with directions. |

Counsel on          Mark S. Morthland (argued), of Moore, Susler, McNutt & Wrigley,
Appeal              LLC, of Decatur, for appellant.

                    James D. Lee (argued), of J.D. Lee Law Offices, LLC, of Tuscola, for
                    appellees.


Panel               JUSTICE KNECHT delivered the judgment of the court, with
                    opinion.
                    Justices Pope and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1    In January 2008, petitioner, Dennis D. Ballinger, purchased the taxes due for tax year 2006 on a 40-acre parcel of farmland in Douglas County (permanent index No. 02-07-24-200-002) (hereinafter the property). In 2010, Ballinger acquired a tax deed for the property. In September 2011, respondents Douglas A. Moore, Richard W. Moore (both as coexecutors of the estate of Joan J. Cook), Clifford M. Jones, and Nancy H. Jones filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)), alleging Ballinger failed to provide proper notice and requesting the tax deed be set aside. In March 2013, the trial court granted respondents' motion for summary judgment and set aside the tax deed.

¶ 2    Ballinger appeals, arguing the trial court erred in granting respondents' summary judgment motion because (1) Nancy does not have a "recorded" ownership interest in the property to be entitled to relief pursuant to section 22-45(4) of the Property Tax Code (35 ILCS 200/22-45(4) (West 2010)), and (2) issues of material fact remain whether Ballinger conducted a diligent inquiry to locate Nancy. We disagree and affirm.


¶ 3                          I. BACKGROUND
¶ 4                     A. Background to the Property
¶ 5    A brief background to the property and respondents' familial relationship is necessary to understand the parties' arguments. (See Appendix A.) Gertrude Jones owned the property at the time of her death in May 1946. At the time of her death, Gertrude had two living children, Theodore Jones and Melville Jones. Nancy is Melville's daughter. Gertrude's third son, George Jones, predeceased her in 1945. George was survived by his wife, Cecily Jones (later Cecily B. Cline), and children, Joan, William and a third child who is not relevant to this appeal. In her will, Gertrude devised the property to Cecily, for life, with the remainder to her grandchildren. Cecily died in January 1984. William's son, Clifford, obtained his interest in the property in 1990. Joan died in April 2011, and was survived by her children, Douglas and

Richard Moore. To summarize, Joan, William, and Nancy are Gertrude's grandchildren, and Clifford, Douglas, and Richard are Gertrude's great-grandsons.

¶ 6 Joan lived in Charlotte, North Carolina; Nancy has lived in Taylorville, Illinois, for 35 years; and Clifford has lived in Champaign, Illinois, for 6 years.

¶ 7 B. The Initial Proceedings

¶ 8 In January 2008, Ballinger purchased the property's taxes due for tax year 2006. In June 2010, Ballinger filed a petition requesting the trial court to issue a tax deed, stating the redemption period would expire on December 9, 2010. He submitted a "Take Notice" to the Douglas County clerk for certified mailing to (1) the Douglas County clerk, (2) Clifford (with a Bristol, Wisconsin, mailing address), (3) William, (4) the Internal Revenue Service, (5) the United States Attorney General, (6) the United States District Attorney, and (7) "Joan Jones Moore" (with a Charlotte, North Carolina, mailing address). The return receipts for the governmental entities and William were returned as delivered. The return receipt for Clifford was returned as "Returned to Sender/Attempted/Not Known." The return receipt for "Joan Jones Moore" was returned as "Returned to Sender/Unclaimed/Unable To Forward." We note Ballinger attached a 2009 federal tax lien for Clifford with a Tuscola, Illinois, mailing address. Ballinger published the "Take Notice" in the Tuscola Journal between August 11, 2010, and August 25, 2010.

¶ 9 On December 30, 2010, Ballinger requested the trial court to issue a tax deed for the property. By affidavit, Ballinger stated the property's owners were the "Cecily B. Cline Estate," Clifford, William, and "Joan Jones Moore." He also stated, upon diligent inquiry of "pertinent documents on file" in the Douglas County court clerk's office he could not locate addresses for the "Cecily B. Cline Estate Heirs, Devisees & Legatees." The same day, the trial court ordered issuance of the tax deed. Ballinger recorded the deed on June 24, 2011.

¶ 10 C. The Instant Proceedings

¶ 11 On September 19, 2011, respondents filed a petition for relief from judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2010)). Respondents alleged they were owners of record of the property and did not receive notice of the tax deed proceedings. All four respondents attached an affidavit stating they did not receive notice of the tax deed proceedings.

¶ 12 In November 2011, Ballinger filed a motion to dismiss respondents' petition. Ballinger asserted he reviewed the records in the Douglas County recorder's office in June 2010, and at the time of his search respondents "did not have any interest whatsoever in the subject property." He argued (1) "the law imposes upon [him] the duty to only conduct one search of the records in the Recorder's Office," and (2) the Moores did not have an interest because they acquired their interest through Joan, who died in April 2011. He added (1) Nancy was a remainderman under Gertrude's will, but "[she] had no recorded interest in the subject property at the time [he] conducted a search of the records in the Recorder's Office" because she was not named in the will; and (2) the publication notice "cures any defect that may exist in

- 3 -

not providing notice if the individual['s] identity *** [is] unable to be ascertained by the certificate holder."

¶ 13   In February 2012, respondents filed a memorandum in opposition to Ballinger's motion to dismiss. Respondents asserted counsel performed "an independent title search" of the Douglas County recorder of deeds', circuit clerk's, treasurer's, and supervisor of assessments' offices. Based on counsel's search, respondents contended someone examining Gertrude's will and the property's ownership should have determined whether Melville had any children. This would have led to Nancy. They added Nancy could be discovered through another deed covering other property devised in Gertrude's will.

¶ 14   In February 2012, the trial court denied Ballinger's motion to dismiss. In its detailed, five-page order, the court ruled Ballinger admitted Nancy was Gertrude's grandchild. It rejected Ballinger's contention Nancy did not have an ownership interest because her interest vested when the life estate terminated in 1984. It added "it is obvious that there was no due diligence" by Ballinger in locating owners as the record showed notice was sent to someone who was not an owner, William, and no notice was sent to someone who was actually an owner.

¶ 15   In November 2012, respondents filed a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2012)). Respondents attached affidavits from William, Clifford, and Nancy. William's affidavit stated (1) he had no ownership interest in the property but the tax bills were sent to him "as a matter of convenience," (2) he requested the tax bills on the property be sent to Joan "several years ago," (3) Ballinger did not contact him about ownership of the property, and (4) Clifford had farmed the property for approximately 15 years. Clifford's affidavit stated he was farming the property. Nancy's affidavit stated she had not received notice or correspondence regarding the tax deed proceedings.

¶ 16   In February 2013, Ballinger filed a cross-motion for summary judgment. Ballinger asserted (1) "Nancy H. Jones had no recorded interest in the subject property at the time [he] conducted a search of the records in the Recorder's Office," (2) "Nancy Jones was *** a remainderman under a life estate that had been created by the will of Gertrude W. Jones," (3) "[i]t is a crucial point that none of the names of the grandchildren were listed in the will of Gertrude Jones," and (4) he was not required to serve notice "on an individual who was not specifically named in the will of Gertrude W. Jones." Ballinger did not attach an affidavit in support of his motion.

¶ 17                     D. The Trial Court's Order

¶ 18   On March 8, 2013, the trial court issued its written order. The court held respondents were entitled to relief under section 22-45(4) of the Property Tax Code (35 ILCS 200/22-45(4) (West 2010)). It rejected Ballinger's "narrow, literalist interpretation" of a recorded interest and concluded Nancy's interest was known and able to be determined as of January 3, 1984, the date the life estate holder died. The court held Ballinger did not make a diligent inquiry and effort to serve Nancy. It concluded Ballinger did not (1) make any effort to determine who farmed the land and ask the farmer who owned the land, or (2) contact William to determine who owned the land despite the notices for Joan and Clifford being returned as undeliverable.

It noted Ballinger's search was "*de minimis*" as it showed a failure to search the probate records and determine who had an interest in the property based on those records.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 Ballinger appeals, arguing the trial court erred in granting respondents' summary judgment motion because (1) Nancy did not have a "recorded" ownership interest in the property to be entitled to relief pursuant to section 22-45(4) of the Property Tax Code (35 ILCS 200/22-45(4) (West 2010)), and (2) issues of material fact remain whether he conducted a diligent inquiry to locate Nancy. We address Ballinger's arguments in turn.

¶ 22 A. Standard of Review

¶ 23 A grant of summary judgment is only appropriate when the pleadings, depositions, admissions, and affidavits demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28, 978 N.E.2d 1000. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact" and the court must determine if a question of fact exists. *Id.* We review *de novo* a trial court's grant of summary judgment. *City of Decatur, Illinois v. Ballinger*, 2013 IL App (4th) 120456, ¶ 21, 988 N.E.2d 737.

¶ 24 Ballinger's appeal raises issues of statutory interpretation of section 22-45(4) of the Property Tax Code. We review issues of statutory interpretation *de novo*. *Pielet*, 2012 IL 112064, ¶ 30, 978 N.E.2d 1000.

¶ 25 B. Section 22-45 of the Property Tax Code

¶ 26 Section 22-45 of the Property Tax Code provides section 2-1401 petitions are permitted to collaterally attack tax deeds. 35 ILCS 200/22-45 (West 2010). The grounds for relief are limited to the following:

"(1) proof that the taxes were paid prior to sale;

(2) proof that the property was exempt from taxation;

(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or

(4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-10 through 22-30." 35 ILCS 200/22-45 (West 2010).

¶ 27                     C. Ballinger's Claim Nancy Did Not Have a Recorded Ownership Interest

¶ 28    Ballinger does not contest Nancy has an ownership interest in the property. Rather, he asserts the trial court incorrectly interpreted section 22-45(4) of the Property Tax Code to conclude she has a "recorded interest." Ballinger asserts "recorded" should be understood according to its "specialized meaning" within the "real estate tax world." Without legal citation (see Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (argument must contain citation to legal authority)), Ballinger contends the legislature's use of "recorded interest" means interests "found in the public records kept in the office that Record's [*sic*] deed, mortgages, and other such ownership." He adds "[t]he legislature did not use language such as [']filed interest, known interest, or unknown interest,['] all of which would all have been more broad [*sic*] and instituted a necessary process that each potential tax purchaser would have to undertake." He concludes since Nancy did not have an interest recorded in the recorder of deeds' office she cannot challenge the tax deed. He also argues Nancy does not have a recorded interest because Gertrude's will did not include Nancy's name. Ballinger's arguments are unpersuasive.

¶ 29                              1. *What Is a "Recorded" Ownership Interest?*

¶ 30    The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 180, 950 N.E.2d 1136, 1146 (2011). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *Id.* A statutory provision should be evaluated as a whole, with each provision construed in connection with other sections. *Id.* "Although a court should first consider the statutory language, a court must presume that the legislature, in enacting a statute, did not intend absurdity or injustice." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 64, 809 N.E.2d 1248, 1268 (2004).

¶ 31    Before addressing the statutory language, we note the primary purpose of the Property Tax Code's tax sale provisions is to encourage property owners to pay their taxes, not to assist tax deed petitioners in depriving actual owners of the property. *In re Application of the County Treasurer*, 347 Ill. App. 3d 769, 777, 807 N.E.2d 1042, 1051 (2004) (hereinafter *HomeSide*); *In re Application of the County Treasurer & ex officio County Collector*, 394 Ill. App. 3d 111, 118-19, 914 N.E.2d 1158, 1165 (2009) (A.P. Properties, appellant). We read section 22-45(4) of the Property Tax Code with this purpose in mind.

¶ 32    The Property Tax Code does not define the phrase "recorded ownership or other recorded interest," the word "recorded," or specify where such ownership interest must be recorded. The First District has interpreted "recorded interest" in section 22-45(4) to mean an interest which can be inferred from public records. *HomeSide*, 347 Ill. App. 3d at 778, 807 N.E.2d at 1051; *In re Application of the County Collector*, 397 Ill. App. 3d 535, 545, 921 N.E.2d 462, 472 (2009) (Devon Bank, appellant); *In re Application of the County Treasurer & ex officio County Collector*, 2011 IL App (1st) 101966, ¶ 51, 955 N.E.2d 669 (hereinafter *Glohry*); see also *In re Application of Ward*, 311 Ill. App. 3d 314, 320, 724 N.E.2d 1, 5 (1999) (hereinafter *Diedrich*). We agree.

¶ 33    Ballinger asserts "recorded" should be understood according to its "specialized meaning within its common use in the real estate tax world." He is incorrect. Statutory language must be given its plain and ordinary meaning. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 18, 990 N.E.2d 1144. Where a statutory term is undefined "[i]t is appropriate to employ a dictionary to ascertain the meaning of an otherwise undefined word or phrase." *Id.* ¶ 20, 990 N.E.2d 1144. "Record" is defined as "to make or have made an authentic official copy of (as a deed, mortgage, lease) and deposit or have deposited esp. as in an office designated by law" and "an authentic official copy of a document entered in a book or deposited in the keeping of some officer designated by law." Webster's Third New International Dictionary 1898 (1976). These definitions support a broad concept of something being "recorded" in various governmental offices, not solely the recorder of deeds' office. Black's Law Dictionary defines "record" as "[i]nformation that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form." Black's Law Dictionary 1301 (8th ed. 2004). Black's also defines "record owner" as "[a] property owner in whose name the title appears in the public records." *Id.* at 1138; see also *id.* at 1301 (defining "public record" as "[a] record that a governmental unit is required by law to keep, such as land deeds kept at a county courthouse"). Black's definition of "record" encompasses the notion something can be recorded in more than a physical copy stored at a governmental building and encompasses the modern trend where records are digitized, electronically stored, and able to be retrieved across various mediums. These definitions do not support Ballinger's assertion something can only be "recorded" in the recorder of deeds' office. Rather, these definitions support a broader concept of documents being "recorded" in the public record and in various offices and forms. Interestingly, our research shows older Illinois cases consistently refer to a will as being "recorded" in the probate court. See *Ayres v. Clinefelter*, 20 Ill. 465, 468 (1858); *Stull v. Veatch*, 236 Ill. 207, 209, 86 N.E. 227, 228 (1908); *Barnett v. Barnett*, 284 Ill. 580, 587, 120 N.E. 532, 535 (1918); *Cobb v. Willrett*, 313 Ill. 92, 97, 144 N.E. 834, 836 (1924); *Clark v. Leavitt*, 335 Ill. 184, 188-89, 166 N.E. 538, 540 (1929); *Allwood v. Cahill*, 382 Ill. 511, 515, 47 N.E.2d 698, 701 (1943). This historical use of "recorded" directly refutes Ballinger's contention a document is "recorded" only in the recorder's office. With these definitions and historical usage in mind, we turn to whether the Property Tax Code supports defining "recorded" as an interest inferred from the public record.

¶ 34    Ballinger's argument focuses on the first clause of section 22-45(4) but seemingly ignores the section's references to the Property Tax Code's notice provisions. His interpretation is problematic when section 22-45(4) is read in conjunction with these notice requirements. The first clause of section 22-45(4) refers to section 22-20 of the Property Tax Code. 35 ILCS 200/22-45(4) (West 2010). Section 22-20 requires a tax purchaser to conduct a "diligent inquiry" to determine the owners and parties interested in the property before providing publication notice to "unknown owners or parties interested." 35 ILCS 200/22-20 (West 2010). As discussed further below, a "diligent inquiry" is an inquiry "as full as the circumstances of the situation will permit." *Liepelt v. Baird*, 17 Ill. 2d 428, 432-33, 161 N.E.2d 854, 858 (1959). The second clause of section 22-45(4) also uses this "diligent inquiry"

language. 35 ILCS 200/22-45(4) (West 2010). Thus, section 22-45(4) contains two references to a standard requiring a broad inquiry to locate interested parties and provide them with notice. Ballinger's interpretation is even more problematic when the issue of who is required to receive notice is considered. Section 22-10 of the Property Tax Code requires tax purchasers to provide notice of the tax sale proceedings to "the owners, occupants, and parties interested in the property, including any mortgagee of record." 35 ILCS 200/22-10 (West 2010). It is well established a tax purchaser must strictly comply with the statutory notice requirements and such notice provisions are to be "rigidly enforced." *In re Application of the County Treasurer & ex officio County Collector*, 403 Ill. App. 3d 985, 990, 935 N.E.2d 570, 574 (2010) (hereinafter *Muskat*). In *Muskat*, the tax purchaser argued the property owner's daughter was not an interested party entitled to notice under section 22-10 because she was a devisee in the property owner's will. *Id.* at 989, 935 N.E.2d at 572. The Second District disagreed. The daughter was vested with title to half of the property when the will was admitted to probate. *Id.* at 991, 935 N.E.2d at 576. The daughter had the right to redeem the property and other rights of ownership. *Id.* The *Muskat* court concluded the daughter was entitled to notice. *Id.* While *Muskat* does not answer whether Nancy is entitled to contest the deed under section 22-45(4), it supports the conclusion she is an interested party entitled to notice. Ballinger's interpretation creates a disparity between persons who are entitled to notice and those who are entitled to section 22-45(4)'s protections. Although the Property Tax Code requires notice to *all* interested persons, persons with an interest contained in public records, but not the recorder's office, could not use section 22-45(4) to contest the tax purchaser's failure to conduct a "diligent inquiry" and provide them with notice. We should not read such a limitation into the statute (*Hamer*, 2013 IL 114234, ¶ 18, 990 N.E.2d 1144) and interpret section 22-45(4) in a manner to render it ineffective for certain property owners who are entitled to notice. A more reasonable and harmonious interpretation of section 22-45(4) is one which reads "recorded ownership or other recorded interest" as an interest which can be inferred from the public records. This allows any person or party with an ownership or other interest ascertainable from the public records (*i.e.*, those entitled to notice) to use section 22-45(4) to challenge the tax purchaser's failure to provide him or her with notice.

¶ 35         Ballinger's proposed construction of section 22-45(4) of the Property Tax Code creates tension with the relevant probate and property law. First, he has not provided any Illinois authority requiring a will to be recorded in the recorder of deeds' office. For a long time, Illinois law only required an administrator's deed when real property was sold during administration of an estate. See *Brian v. Melton*, 125 Ill. 647, 651, 18 N.E. 318, 319 (1888); 755 ILCS 5/20-10 (West 2012). Then in 1980, the legislature added the independent administration article to the Probate Act of 1975. Pub. Act 81-213, § 1 (eff. Jan. 1, 1980). Under the independent administration provisions, when the decedent's "estate includes an interest in real estate that has not been sold by the independent representative, the independent representative must record and deliver to the persons entitled thereto an instrument which contains the legal description of the real estate and releases the estate's interest." 755 ILCS 5/28-10(a) (West 2012). As suggested by the parties at oral argument, this provision would have unquestionably made it easier to determine Nancy's interest in the property. The problem

is Gertrude's will was probated in 1946, before the requirements of section 28-10 of the Probate Act of 1975. We must be careful not to impose current standards of probate practice on earlier times and, as this case highlights, we should also read section 22-45(4) in a manner to preserve interests transferred pursuant to previous probate practice. (Again, earlier cases referred to wills as being "recorded" in the probate court, which reflects a practice where wills were not recorded in the recorder's office.) Illinois law has long accepted a will admitted to probate transfers title to the real estate to the devisees named in the will. *In re Estate of Stokes*, 225 Ill. App. 3d 834, 839, 587 N.E.2d 564, 568 (1992); 755 ILCS 5/4-13 (West 2012); see also *Havill v. Havill*, 332 Ill. 11, 15, 163 N.E. 428, 429 (1928) ("A will speaks from the death of the testator. At the moment of his death the rights of his heirs and devisees to succeed to his estate are fixed and vested ***."); *In re Estate of Matthews*, 409 Ill. App. 3d 780, 784-88, 948 N.E.2d 187, 191-95 (2011) (discussing devisee's responsibility to pay real estate taxes). In language unchanged since 1871, section 33 of the Conveyances Act states a will "may be recorded in the same office where deeds and other instruments concerning real estate may be required to be recorded." 765 ILCS 5/33 (West 2012); 1871-72 Ill. Laws 282 (§ 33). In *Clark*, 335 Ill. at 186, 166 N.E. at 539, a case decided by our supreme court in 1929, the question was "[w]hether a probated will devising real estate is constructive notice in respect to land lying within the county in which the will was probated." The appellants argued the record of the probate of a will was not constructive notice of the contents of the will until it was recorded in the recorder of deeds office. *Id.* at 187, 166 N.E. at 539. The supreme court turned to section 33 of the Conveyances Act. The court stated:

> "The section contains no provision requiring that a will probated in the county in which the real estate is situated shall not be constructive notice of its contents to anyone dealing with such land, nor is there any section of the Conveyance act made applicable to wills. Clearly, the legislature in passing the various sections of that act requiring recording in the recorder's office of foreign wills and other instruments in writing could not have overlooked the fact that a will devising lands situated in the county in which it is probated as directly affects title to real estate in such county as any other instrument which is required by the Conveyance act to be recorded in the recorder's office. It would seem, therefore, that the legislature took cognizance of the fact that the probate of a will should constitute constructive notice. The legislature must have recognized that the probate or county court is a court of record and its records are a part of the records of the county. One examining the condition of a title, as is well recognized, is required to look further than the recorder's office to know the condition of the title. If there be a judgment against the land owner of record in that county, either as an original judgment or a transcript of a judgment of a foreign court, the purchaser of real estate is required to take notice of the lien of such judgment though it is not filed of record in the recorder's office. So with special assessments and special taxes. There appears, therefore, to be no reason why the legislature should have required that in addition to recording a will in the probate court it should likewise be recorded in the recorder's office, for to so require would not tend to give additional protection to the

purchaser and would impose an unnecessary burden on the land owner." *Clark*, 335 Ill. at 189-90, 166 N.E. at 540.

Ballinger's argument is similar to the one rejected by the supreme court in *Clark*. He too would ignore probate records. This despite the well-established principle a will admitted to probate transfers title to real property and the fact the Conveyances Act does not require a will to be recorded. See *Stokes*, 225 Ill. App. 3d at 839, 587 N.E.2d at 568; *Havill*, 332 Ill. at 16, 163 N.E. at 430 ("The effect of the probate of a will is to vest the title in the devisee as completely as a deed from the owner of property vests the title in his grantee ***."). As the supreme court identified in *Clark*, this imposes an unnecessary burden on an owner to protect his or her interest. We decline the invitation to read section 22-45(4) in such a manner that permits tax purchasers to ignore probate records while frustrating long-standing probate and property law. Moreover, under Ballinger's reading, persons who acquired an interest in real property through a will not recorded in the recorder's office would not be able to challenge a tax purchaser's failure to provide him or her with notice. We will not read section 22-45(4) in a way to place at risk interests not recorded in the recorder's office although the interest is identifiable in other public records. It is more reasonable to interpret "recorded ownership or other recorded interest" as an interest that can be inferred from public records. While this requires a tax purchaser to expand his search beyond the recorder's office, it eliminates unnecessary tension between section 22-45(4) and well-established probate and property law.

¶ 36    Ballinger's interpretation is ultimately untenable. His interpretation would (1) transform the "diligent inquiry" requirement into a limited search of the recorder of deeds' records, (2) impose a requirement not contemplated by probate and property law on a property owner who acquired her interest through a will not recorded in the recorder's office, and (3) frustrate a true owner's ability to reclaim her property. We will not so interpret section 22-45(4) without a clear indication the legislature intended such results. The problems created by Ballinger's interpretation of section 22-45(4) can be resolved by defining "a recorded ownership or recorded interest" as an interest that can be inferred from the public record. This is supported by the plain meaning of "recorded," the historical usage of the word, the Property Tax Code's notice provisions, and the relevant probate and property law.

¶ 37                    2. *Did Nancy Have a Recorded Interest?*

¶ 38    Ballinger asserts Nancy does not have a "recorded" ownership interest because Gertrude's will does not specifically name Nancy as a grandchild. It is uncontested Gertrude's will was probated after her death and a matter of public record since 1946; it devised the property, after the life estate, to her "grandchildren"; and Nancy is Gertrude's granddaughter. Ballinger has offered no legal citation or convincing argument in support of his contention Nancy's ownership interest should be ignored because she was not expressly named in the will. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (argument must contain citation to legal authority). As respondents point out, the use of a class gift is a common drafting technique to name persons who are uncertain at the time of the will's drafting. See *Krog v. Hafka*, 413 Ill. 290, 298, 109 N.E.2d 213, 217 (1952) (definition of "class gift"). We reject Ballinger's contention Nancy does not have a recorded interest because the will included a class gift to Gertrude's

"grandchildren" but did not state Nancy's name. As a grandchild, Nancy had a recorded interest.

¶ 39                    D. Ballinger's Claim He Conducted a Diligent Inquiry

¶ 40        Ballinger contends a question of material fact exists as to whether he conducted a diligent inquiry to determine Nancy's ownership interest. Ballinger takes issue with the trial court's interpretation of what is required for a diligent inquiry and argues the Property Tax Code does not include an "exhaustive list" of what is required. He adds no provision requires tax scavengers to (1) serve a tax notice on "every interested party or owner *** no matter what the cost" and (2) conduct "interviews or discussions with the neighbors or purported interest holders in attempting to fully determine every single individual known and thus served." On the merits, he asserts (1) Gertrude's probate file does not identify Nancy as a granddaughter, (2) "when the life tenant *** died her estate was probated and again Nancy Jones' name was not mentioned anywhere in that file," (3) the life estate holder's will included a provision transferring the property to her daughter, and (4) his efforts revealed William was an interested party and he was served with notice. He appears to assert the diligent inquiry requirement is satisfied where notice publication is given to unknown owners.

¶ 41                         1. *What Is a Diligent Inquiry?*

¶ 42        The Property Tax Code requires the tax purchaser to conduct a "diligent inquiry" to locate property owners and interested parties. 35 ILCS 200/22-15, 22-20, 22-45(4) (West 2010). Our supreme court has defined a "diligent inquiry" for purposes of locating property owners in a tax sale proceeding as follows:

> " 'such inquiry as a diligent man, intent upon ascertaining a fact, would usually and ordinarily make,–inquiry with diligence and in good faith to ascertain the truth.' "
> *Shockley v. Good*, 13 Ill. 2d 298, 302-03, 148 N.E.2d 763, 765 (1958) (quoting *Van Matre v. Sankey*, 148 Ill. 536, 562, 36 N.E. 628, 635 (1893)).

This inquiry must be "as full as the circumstances of the situation will permit." *Liepelt*, 17 Ill. 2d at 433, 161 N.E.2d at 858. As discussed above, Illinois courts have held "a tax purchaser has failed to act with minimal diligence if he has not made reasonable efforts to notify all persons whose interest may reasonably be inferred from the public records regarding the property's ownership." *Glohry*, 2011 IL App (1st) 101966, ¶ 44, 955 N.E.2d 669.

¶ 43                      2. *Did Ballinger Make a Diligent Inquiry?*

¶ 44        On appeal, Ballinger contends a question of material fact exists about whether he made a diligent inquiry. He does not contest what he did but takes issue with the trial court's conclusion he did not conduct a diligent inquiry. Our review of Ballinger's argument and the record reveals no dispute as to the material facts. The dispute between the parties is over the legal effect of the settled facts.

¶ 45        Ballinger's argument about the trial court's interpretation of the "diligent inquiry" requirement misunderstands what is required by the Property Tax Code. The Property Tax

Code repeatedly requires tax sale purchasers to conduct a "diligent inquiry" to locate owners and interested parties. See 35 ILCS 200/22-15, 22-20, 22-45(4) (West 2010). As our supreme court long ago stated, a diligent inquiry includes the understanding "[p]rudent and diligent men, who in good faith are seeking to find, pursue those lines of inquiry open to them which may lead to the ascertainment of the fact, and exercise at least ordinary diligence therein." *Van Matre*, 148 Ill. at 562, 36 N.E. at 635. As the supreme court stated in *Clark*, "[o]ne examining the condition of a title, as is well recognized, is required to look further than the recorder's office to know the condition of the title." *Clark*, 335 Ill. at 189, 166 N.E. at 540. While an "exhaustive list" covering every possible scenario might be desirable, the Property Tax Code gives tax purchasers the ability to determine what is required in a given situation. Some cases may only require a quick investigation while others may require more effort and shoe leather. A tax purchaser need not conduct an open-ended search (*In re Application of the County Collector*, 225 Ill. 2d 208, 237, 867 N.E.2d 941, 956 (2007) (hereinafter *Lowe*)), but all cases require a tax purchaser to pursue all lines of inquiry open to him. These lines of inquiry include sources such as probate records, public directories, voter registration records, and visiting the property. See *In re Application of the County Collector*, 163 Ill. App. 3d 461, 464, 516 N.E.2d 736, 738 (1987) (La Salle Street Acquisitions, appellant); *Muskat*, 403 Ill. App. 3d at 994, 935 N.E.2d at 578; *Lowe*, 225 Ill. 2d at 231, 867 N.E.2d at 953; *Diedrich*, 311 Ill. App. 3d at 320, 724 N.E.2d at 6. In our contemporary, technologically connected society, a diligent individual would undoubtedly utilize the Internet–with its enormous reach and nearly instant results–to locate property owners and addresses. We note in the Fourth District alone there are at least 10 counties with searchable online property records.

¶ 46 In determining whether a question of material fact exists several procedural principles of summary judgment are important to remember: (1) parties filing cross-motions for summary judgment concede the absence of factual issues and request the court to decide the question presented as a matter of law (*Pielet*, 2012 IL 112064, ¶ 28, 978 N.E.2d 1000); (2) "facts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion" (*Purtill v. Hess*, 111 Ill. 2d 229, 241, 489 N.E.2d 867, 871-72 (1986)); and (3) a nonmovant cannot rest on his pleadings to create a genuine issue of material fact if the moving party has supplied facts which, if not contradicted, would warrant judgment in the movant's favor as a matter of law (*Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 432, 781 N.E.2d 249, 260 (2002)). Here, Ballinger conceded the absence of a factual issue when he filed a cross-motion for summary judgment. Further, respondents filed four affidavits in support of the summary judgment motion but Ballinger did not file a counteraffidavit. Ballinger admitted all facts contained in respondents' affidavits, including the following: (1) he did not contact William, (2) Clifford had farmed the property for the past 15 years, and (3) no one with an ownership interest received notice of the tax proceedings. Now on appeal, Ballinger does not contest the evidence showing he did not (1) ask tenants, neighbors, local farmers, or anyone else about who owned the land; (2) ask William who owned the property or how to contact them; (3) conduct an Internet search; or (4) try to locate Nancy. Ballinger does

not argue he did otherwise. Contrary to his assertions, Ballinger has conceded every fact relevant to this appeal.

¶ 47        His arguments about Gertrude's will miss the point. The will's failure to identify Nancy does not absolve Ballinger from determining who Gertrude's grandchildren were. His efforts focused on the daughter-in-law's estate where he was able to identify three grandchildren. The record is clear, however, he did not examine Gertrude's other two sons to determine if those sons had children. Had he traced the family line through Melville he would have discovered Nancy. He investigated one branch of the family tree while ignoring the other two branches of the tree. Ballinger's efforts to serve Clifford and Joan are telling of his minimal approach to locating the property's owners. The notices sent to Joan and Clifford were returned undeliverable. Yet Ballinger did not make an effort to locate them by contacting William, using Clifford's Tuscola address contained on the federal tax lien, or even determining if "Joan Jones Moore" was Joan's correct name. See *Jones v. Flowers*, 547 U.S. 220, 229 (2006) (noting tax sale purchasers "who actually desired to inform a real property owner" of the proceedings would not just "do nothing when a certified letter sent to the owner is returned unclaimed"). As a result, no one with an ownership interest in the property was actually notified of the tax sale proceedings. We reject Ballinger's contentions a publication notice cures his failure to conduct a diligent inquiry. See *Jones*, 547 U.S. at 237. As the trial court stated, Ballinger's efforts constitute "an absolute failure" and reveal a "*de minimis* approach" in attempting to locate the property owners.

¶ 48                                        E. The Trial Court's Order

¶ 49        Section 22-80 of the Property Tax Code requires orders vacating tax deeds to declare the tax sale to be a sale in error pursuant to section 21-310 of the Property Tax Code (35 ILCS 200/21-310 (West 2010)) and direct the county collector to issue a refund to the tax purchaser. 35 ILCS 200/22-80(a) (West 2010). The March 3, 2013, order did not include provisions required by section 22-80 of the Property Tax Code. We remand with directions for the trial court to amend its order to comply with section 22-80 and order respondents to pay the delinquent taxes owed.

¶ 50                                        III. CONCLUSION

¶ 51        We affirm the trial court's judgment. We remand with directions for the trial court to amend its order to comply with section 22-80 of the Property Tax Code (35 ILCS 200/22-80 (West 2010)) and order respondents to pay the delinquent taxes owed.

¶ 52        Affirmed and remanded with directions.

Appendix A
Case No. 4-13-0261

